ELSIE SEAMANS et al., Appellees, v. E. L. GALLUP et al., Appellants.

**WILLS:** Testamentary Capacity—Old Age and Infirmities. Principle

reaffirmed ·that old age and attendant infirmities do not necessarily disqualify one from executing a valid will. Evidence reviewed, and held wholly insufficient to justify the submission of the issue of testamentary capacity.

*Appeal from Buchanan District Court.*—GEORGE W. WOOD, Judge.

NOVEMBER 21, 1922.

REHEARING DENIED MARCH 13, 1923.

ACTION to set aside the probate of a will for lack of testamentary capacity. Cause tried to a jury resulting in a verdict for the plaintiff contestants. Defendants appeal.—*Reversed.*

*E. R. O'Brien* and *McCoy & Beecher,* for appellants.

*Cook & Cook* and *M. A. Smith,* for appellees.

DE GRAFF, J.—This action involves the validity of the last will and testament of Mary Ann Gallup who departed this life October 14, 1917. The will in question was executed and witnessed December 29, 1916, and duly proved and admitted to probate November 12, 1917.

Edmund Gallup predeceased the testatrix having died intestate December 5, 1915. His estate in value about $160,000 was distributed one third to the widow Mary Ann Gallup, and two thirds to the three children of said marriage to wit: Edward L. Gallup, Mary Pierce and Luella McGlaughlin. On July 24, 1916 the daughter Luella died leaving surviving her Charles McGlaughlin her husband, and two children Elsie McGlaughlin and Gladys McGlaughlin and a grandchild Maxine Patton a daughter of a deceased daughter, Grace McGlaughlin Patton. Elsie subsequently married and is known in this record as Elsie Seamans.

The will in controversy devised the entire estate to the two living children of testatrix, Edward L. Gallup and Mary Gallup Pierce who are the proponents of the will and the defendants in suit. The contestants and plaintiffs herein are Elsie (McGlaugh-

lin) Seamans in her own right, and Maxine Patton and Gladys McGlaughlin by *prochein ami*.

Plaintiffs allege two grounds in petition, to wit: undue influence and unsoundness of mind. At the close of plaintiff's testimony on motion of the defendants the court withdrew from the consideration of the jury the issue of undue influence but overruled said motion as to mental incapacity. The motion to direct a verdict on behalf of the defendants was renewed at the conclusion of all the evidence on the ground that the plaintiffs had failed to sustain by competent or sufficient evidence the allegation that the testatrix lacked testamentary capacity to make the will in question. This motion was overruled by the court and the cause was submitted to the jury under instructions that are not seriously challenged. This appeal therefore primarily concerns itself with the sufficiency of the evidence to sustain the verdict and the judgment entered thereon.

At the outset we have no hesitation in saying that the court should have sustained defendant's motion for a directed verdict or should have granted a new trial after verdict as the verdict is not sustained by sufficient evidence. In cases of this character it is not a question whether the proponents have submitted any evidence in support of their charge but whether there is enough evidence that ought reasonably to satisfy the jury "that the facts sought to be proved are established." *Bales v. Bales*, 164 Iowa 257. Some evidence of mental incapacity is not sufficient to submit the question to a jury. See, also, *Wendt v. Foss*, 161 Iowa 122. It is only when mental weakness on the part of the person making the will becomes so complete that such person ceases to comprehend the nature and effect of the act of testamentary disposition. *Leonard v. Shane*, 182 Iowa 1134. As bearing upon this proposition the trial court in the instant case instructed the jury clearly and properly on the essentials for a validly executed will, to wit: (1) Sufficient mental capacity to understand the nature of the act. (2) To recollect and know the extent of her property and (3) The natural object of her bounty. (4) To know and comprehend the manner in which she wished to distribute her property among the natural objects of her bounty and (5) The nature

of the claims of those who are excluded from participation in her bounty.

Upon an examination of the record in the light of these propositions the evidence utterly fails to impeach the testamentary capacity of the testatrix.

We deem it unnecessary to set out in detail the testimony offered on behalf of either contestants or proponents. It is shown that on December 29, 1916 Mrs. Gallup called Mr. A. H. Neiman to her home and told him she desired to make a will. Mr. Neiman was her banker and she had every confidence in him. He testified: "She told me how she wanted the will drawn; she said she wanted her property to go to her son Ed and her daughter Mary, share and share alike; she said 'I have sufficient reasons for doing so.' "

He prepared the will in conformity to her wishes and took it to her home where it was signed by Mrs. Gallup and witnessed by Mr. Neiman and by Messrs. Everett and George whom she requested that Mr. Neiman should secure as witnesses. Both the testimony of plaintiffs and defendants overwhelmingly sustain the proposition that the testatrix understood the nature of the act. Mrs. Gallup's mind had been poisoned to a certain extent against Elsie McGlaughlin Seamans by reason of the birth of an illegitimate child to Elsie.

It further appears that she had an impression that the McGlaughlin family had received sufficient from her husband's estate. Sufficient to state that she appreciated the nature of her act and that it was necessary to make a will in order to have all of her estate go to her children Ed and Mary.

The record leaves no doubt that her mind was perfectly clear on money and property matters and she "would name the children and grandchildren and her great grandchildren." Mrs. Rehberg one of plaintiff's witnesses testified: "She realized what property she had. * * * She was able to tell me the extent of her property and whom she thought ought to get it. She knew about Mary and she knew about Eddie and knew about the McGlaughlin children and she knew who she wanted to get her property. When she talked about her children and talked about her property and money she seemed all right mentally."

Other witnesses of plaintiff gave testimony of like tenor

and similar import. Originally the testatrix had intended to remember Luella McGlaughlin's children but she changed her mind and stated she had sufficient reasons for so doing.

The testimony shows that in December 1915 she was not only acquainted with the quantum of her husband's estate at the time of its settlement and distribution among the children but that she had knowledge of the value of the items of the estate including the collectibility of certain mortgage notes.

On the 20th day of March 1916 she signed with certain heirs of her deceased husband a warranty deed conveying to Edward L. Gallup a valuable parcel of Iowa real estate. Nobody intimates that this transaction is impeachable.

Sufficient to state that she had ability to know and understand business transactions. Not only this but she understood the current events of the vicinity, transacted business at her bank, made purchases at the local stores and could correctly locate the residences of people of her acquaintanceship.

The record is replete with evidence that she had testamentary capacity. Mrs. Gallup was about 74 years of age and it is true that she had some of the physical ailments attendant upon old age. A short time prior to the making of the will she had suffered from a slight sunstroke and thereafter was subject to occasional dizziness. Her eyesight was failing and due to this fact at times she failed to recognize old acquaintances but as soon as she heard the voice recognition was instant. A lack of the mental vigor of youth is not proof of testamentary incapacity. Memory may fail but reason is not necessarily dethroned.

In the last analysis the only point of attack is that at the moment she signed the will she forgot the McGlaughlin children as proper recipients of her bounty. The evidence fails to support this claim or theory.

We have given the record a critical consideration and reached the conclusion that the evidence fails to support the verdict and the court erred in overruling the defendant's motion for a directed verdict.

In view of the conclusion announced herein it is unnecessary to note other and minor points urged by appellants.

Wherefore the judgment entered by the trial court is—*Reversed.*

WEAVER, PRESTON, and ARTHUR, JJ., concur.

STEVENS, C. J., concurs in the result.