IN RE ESTATE OF CAROLINA LOCHMILLER.

GUS LOCHMILLER et al., Appellants, v. CLEMENTINA RANSOM, Appellee.

**WILLS:** **Undue Influence—Burden of Proof.** The burden of proof which rests on a contestant to establish undue influence in the execution of a will is not met by a mere showing that the testator and the beneficiary under the will lived together, and that a filial relation existed between them.

Headnote 1:   40 Cyc. pp. 1150, 1151, 1153.   Headnote 2:   40 Cyc. p. 1333.

*Appeal from Crawford District Court.*—E. G. ALBERT, Judge.

FEBRUARY 10, 1925.

CONTEST over the admission to probate of an instrument purporting to be the last will and testament of one Carolina Lochmiller, deceased, upon objections filed by Gus Lochmiller, G. F. Lochmiller, Rudolph Lochmiller, and Mrs. Antonia Johnson, children of the testatrix. Upon the conclusion of the evidence, a verdict was directed in favor of the proponent, and judgment was entered taxing costs to the contestants, who appeal.—*Affirmed.*

*Sims, Kuehnle & Page,* for appellants.

*W. E. Kahler* and *Earling Garrison,* for appellee.

De Graff, J.—The issues, as tendered by the objections filed, were: (1) Want of testamentary capacity; (2) unsoundness of mind; (3) improper execution; and (4) undue influence of the daughter, Clementina Ransom, the proponent, and the members of her family. By an amendment to the objections, the contestants conceded the due execution of the will. The objection thereafter urged was that of undue influence, although it does not appear that the issue of unsoundness of mind was waived.

Upon the motion of the proponent at the conclusion of the testimony, the court directed a verdict in her favor, on the ground that there was insufficient evidence to take the case to the jury on the issues of either the mental incapacity of the testatrix to make a will, or undue influence. The correctness of this ruling is the basis of this appeal.

Taken in its most favorable aspect for contestants, their own evidence fails to establish facts from which mental incapacity may reasonably be inferred. Testatrix was a woman of advanced years, and totally blind during the latter part of her life. There was also testimony given by defendants tending to show that the deceased had suffered from bowel trouble for some years before her death. These facts have little or no probative value in establishing unsoundness of mind. The incidents in the testimony of contestants are not unusual in the conduct of a person who, having become blind, was quite helpless during the later years of life.

Did the court err in taking from the jury the issue of undue influence? The argument of appellants is confined chiefly to this alleged error. Having admitted the due execution of the will, the burden of proof was upon them to establish undue influence; and unless a verdict for the contestants on this issue could have been properly sustained by the trial court, the ruling below must be affirmed. The fact that executrix and beneficiary lived together, or that a filial relation existed between them, does not, in the absence of other evidence, relieve contestants

of the burden. *In re Will of Boyle,* 186 Iowa 216; *Graham v. Courtright,* 180 Iowa 394; *Pirkl v. Ellenberger,* 179 Iowa 1122. In the *Pirkl* case, supra, the court pointed out the distinction between transactions *inter vivos* and testamentary dispositions. It is said:

"Where one sustaining fiduciary relations to another secures from the other a gift or donation, or a contract greatly to the disadvantage of the giver, *inter vivos,* the law raises a presumption that the gift would not have been made, or the contract entered into, through the free and voluntary volition of the giver. This presumption calls upon the beneficiary to purge himself at least from a suspicion of improper influence in bringing about the gift. * * * In contemplation of death, however, the transaction wears a very different aspect. The property must be parted with when that event arrives. It is most natural to select for benefaction those who are nearest and dearest, whether related by blood, business, friendship, or association. Men do not, in contemplation of death, ordinarily give their earthly possessions over to their enemies, nor to those in whom they repose no trust and confidence. Indeed, the closer the relationship, the greater the bond that binds, the more certain is the mind that the testator chose intelligently the objects of his bounty. That he chose one who is dear to him and excluded one who ought to be equally dear, does not cast upon the beneficiary the burden of showing that he did not procure the benefaction by the use of undue influence."

In the case at bar, there was no direct evidence of undue influence. While there need not be such evidence, yet the facts and circumstances relied upon must be inconsistent with absence of undue influence, or they will be insufficient. The record discloses that, after the death of her husband, testatrix made an arrangement whereby her daughter and family moved into the residence of testatrix, with the condition that the latter should have her board and a room. This arrangement was subsequently changed, and the daughter became obligated to pay rent in the sum of $50 per month. In the meantime, the mother had become blind, and was in that condition for about 7 years before her death. About 2 years prior thereto, and when she was almost 80 years of age, she executed a will giving her entire estate to

her daughter. The evidence offered on the question of undue influence merely tended to prove that the daughter had the opportunity of influencing her mother to make a disposition of the property in her favor, and that the mother was a person who could be influenced by her daughter or anyone else. Throughout the entire record, the testatrix clearly appears to be a woman of exceptionally strong will, who insisted on having her own way, and usually got it. The incidents narrated by contestants to show the attitude of the daughter toward her mother, indicate that the daughter had no control or influence over testatrix. The only thing that may be said with respect to this testimony, if accepted as true, is that the proponent is lacking in filial duty and respect. However, no evidence indicates that the testatrix did not appreciate the care given her in her blind and helpless condition. That the mother was in any fear of the daughter, or yielded to any sort of pressure relative to the disposition of the property, does not appear in the record, except from mere conjecture.

On its facts, the case is quite similar to *Brackey v. Brackey*, 151 Iowa 99, and we quote briefly:

"It is often urged upon courts, especially in will cases, that opportunity to exercise influence over the testator, the interest of a favored heir in securing more than his equal share in the estate, his close association with the deceased in the later years of his life, and other circumstances which are consistent with a wrongful purpose to obtain and exercise control over him in the making of his will, but are equally consistent with good faith and honesty of purpose, make a case on which contestant is entitled to go to the jury. But such is not the rule."

We conclude, under the facts before us in the case at bar, that the trial court correctly ruled the motion for a directed verdict, and the judgment entered is, therefore,—*Affirmed.*

FAVILLE, C. J., and STEVENS and VERMILION, JJ., concur.