IN RE ESTATE OF LEOPOLD PACZOCH.

GREADY BRESON, Proponent, et al., Appellees, v. BENJAMIN B. BISTRAM et al., Contestants, Appellants.

**WILLS: Testamentary Capacity—Jury Question.** A showing of old age, 1 deafness, forgetfulness, inability to understand, moroseness, shyness, exclusiveness, lessened ability to transact business, and a general slowing down of the mental processes to a degree common with the aged, does not necessarily present a jury question on the issue of testamentary capacity. (See Book of Anno., Vol. 1, Sec. 11846, Anno. 39 *et seq.)*

**WILLS: Testamentary Capacity—Opinion Evidence—Insufficient Basis.** 2 A non-expert witness may not express an opinion that a testator was of unsound mind on a recital of facts which pertain solely to his *physical* condition.

**WILLS: Undue Influence—Solicitation, etc.** · Principle reaffirmed that 3 mere solicitation, request, or importunity is not sufficient to invalidate a will unless it takes such form that the will of the wrongdoer is substituted for the will of the testator.

Headnote 1:  40 Cyc. p. 1331.  Headnote 2:  40 Cyc. p. 1041  (Anno.) Headnote 3:  40 Cyc. p. 1147.

Headnote 1:  28 R. C. L. 405.  Headnote 2: 28 R. C. L. 140.

*Appeal from Dubuque District Court.*—D. E. MAGUIRE, Judge.

DECEMBER 14, 1926.

This is a will contest. The court directed a verdict for the proponent, and the contestants appeal.—*Affirmed.*

*Lyon & Willging,* for appellants.

*M. H. Czizek* and *Frantzen, Bonson & Gilloon,* for appellees.

Faville, J.—The testator, Leopold Paczoch, was never married. He came from Germany as a young man, and lived for many years in the city of Dubuque. He worked as a meat inspector in a packing plant for about 30 years, but for the last 20 years of his life had no steady employment. He died September 20, 1923, at the age of 82 years. The will in controversy was executed August 31, 1923. The sole heirs at law are the children of a deceased sister, and they are all named as beneficiaries in his will, but not in equal amounts. These nieces and nephews are Gready Breson, Anna Wampach, and Robert A., August, and Benjamin B. Bistram. Under the terms of the will, Benjamin B. Bistram received a legacy of $50, and Anna Wampach is made an equal residuary legatee with Robert Bistram. The estate consisted mainly of corporate stock and one real estate mortgage. The major portion of the stock was bequeathed to Gready Breson, and the other portion to August Bistram.

Two grounds of challenge to the will are interposed, which are that the testator was of unsound mind, and that the will was procured by undue influence and fraud. The case presents the picture of an old man, advanced in years, slowly passing toward the sunset of life, without wife or child, and with the physical and mental infirmities that are characteristic of such age. For many years, he and an unmarried sister made their home together. About 20 years prior to his death, this sister died. He then took up his home with another sister, Mrs. Bistram, who was at the time a widow, and he lived with her and two of her sons until Mrs. Bistram's death, in June of 1923. For a time after her death, he continued to sleep at the Bistram home, as did the two Bistram boys. During said time, he took his meals at the home of his niece, Gready Breson, who lived next door. After living in this way for a month or so, he moved to the home of Gready Breson, and lived there until his death.

The nephew Robert agreed to pay Gready Breson $50 a month for the room and board of the testator, and he did so pay it during this time. The sole contestants to the will are Benjamin B. Bistram and Anna Wampach.

I. We first consider the question of mental incapacity. The evidence in the case is voluminous, and, as is usual in such cases, consists of a large amount of testimony of relatives, neighbors, and friends. The acts and conduct, the declarations and doings of the old gentleman for many years of his life, were gone into in detail by the various witnesses, and passed in review before the court. Obviously, it is impossible to review this evidence *in extenso*. It would serve no useful purpose for us to do so. The appellants summarize the general characteristics which they claim the evidence supports in regard to the physical and mental condition of the testator. Briefly stated, their contention is that the evidence establishes, or at least tends to show, that, during the last four or five years of his life, it was difficult for those talking with the testator to make him understand and clearly comprehend what they were saying. He was forgetful. He forgot his old acquaintances, and sometimes failed to speak to them. He forgot the fact of the death of old friends and acquaintances, and made inquiry of their relatives in regard to them after their death. At times, he was morose and shy and exclusive. Toward the latter part of his life, there was a marked change in his physical condition. He was backward, and had little or no initiative. For a number of years, he had made weekly pleasure trips in a launch upon the river, usually accompanied by a certain party, who met him in July or August of 1923 and shook hands with him and spoke with him about the boat, but did not seem to get any recognition from the testator. There is evidence that, during the last five years of his life, he transacted practically no business, and he sometimes lost or misplaced valuable papers. He sometimes forgot to take money collected for rents after he had written a receipt for it at the time. He forgot his hat, when leaving a tenant's house, and forgot where he left his spectacles. He got lost in the city, while going to visit a house where he had formerly been many times. He had a habit of sitting in one place in his home, oftentimes for hours at a time, and sometimes talked or mumbled to himself. He got

1. WILLS: testamentary capacity: jury question.

confused regarding change. He was afflicted with pernicious anæmia, of which disease he died.

The foregoing does not attempt to set out in minute detail all of the incidents relied upon by the appellants, but shows the general character of the testimony relied upon by them to take the case to the jury. The evidence in behalf of the proponent disclosed an altogether different picture; but, inasmuch as the trial court directed a verdict in favor of the proponent, we must consider the testimony in the case in the light most favorable to the contestants, and determine therefrom whether the court erred in directing a verdict in behalf of the proponent. With this thought in mind, we have examined the record in this case, and are constrained to concur in the opinion of the trial court that the contestants did not present a case entitling them to go to the jury upon the question of the claimed mental incapacity of the testator. This testator was a German, and spoke his own language till the day of his death, and never became proficient in the use of the English language. He was forgetful of names and faces and of incidents, but the record shows that he conversed intelligently about recent events. He looked after his property understandingly. There is no claim that he made bad bargains or was easily imposed upon, or that he neglected to look after the property that he had. A very large amount of the evidence offered by the contestants was from non-expert wit-

2. WILLS: testamentary capacity: opinion evidence: insufficient basis.

nesses, who expressed opinions that the testator was of unsound mind. The rule is that a non-expert witness cannot recite facts and base an opinion on such recited facts unless the recited facts are of such a character that they have a tendency at least to support the opinion expressed. See *Hann v. Hann,* 202 Iowa 807, and cases cited therein. The opinion of a non-expert witness that a testator was of unsound mind is no stronger than the facts testified to by the witness, upon which the opinion is based. *Fothergill v. Fothergill,* 129 Iowa 93; *In re Will of Richardson,* 199 Iowa 1320. Upon the application of this rule, it necessarily follows that certain of the opinions of non-experts offered in behalf of the contestants in the case were not competent evidence. The recitals of incidents by the non-expert witnesses in regard to the condition and the conduct of the testator were not sufficient to carry to the jury the question

of determining whether the testator was so lacking in mental capacity that he was incapable of executing a will. The right of a citizen to dispose of the property which he has accumulated during his lifetime in such manner as he sees fit, under certain statutory limitations, is one of the greatest inducements to thrift and to the accumulation of property, and one that the courts should be slow to deprive a testator of exercising because of a claim that he is mentally incompetent to do so. It is a matter of common knowledge that with advancing years the faculties grow dim, and the mental processes are slower; but such condition, without more, does not necessarily deprive a testator of the mental capacity to execute a valid will. So long as he retains the ability to know his property and to remember the natural objects of his bounty and to exercise judgment and discretion in regard thereto, he is mentally competent to execute a valid will. In this connection, we have not overlooked the fact that the appellants offered as an expert witness a physician who had never examined the testator, but who, in answer to a hypothetical question propounded to him by the appellants, said that in his judgment such a person as the man described in the question would be a person of unsound mind and affected with senile dementia. On cross-examination, he said that a person might do one thing correctly, and might do half a dozen things correctly; that he might enter into a contract and carry it out and appreciate the nature and terms of the contract; that he might do some things right, or some group of things, and still would be in such a state of mind that the witness would call him of unsound mind. The testimony of this witness, coupled with that of the non-experts, was not sufficient to carry the contestants' case to the jury. In *Leonard v. Shane*, 182 Iowa 1134, we said:

"In proof of such claim [mental incapacity], it is never difficult to find witnesses who remember that he was forgetful, or was absent-minded or childish; that he would repeat old stories, had become careless in matters of dress; that he sometimes failed to recognize a friend or acquaintance; that his eyesight and hearing had become impaired; and so on through the whole category of infirmities which usually and normally appear in those who have passed the zenith of life and wend their halting way to its sunset. Nor is there ever wanting the expert,

ready to respond, to a hypothetical question embodying all these details, that one who manifests these varied symptoms is a 'senile dement.' Such answer may be scientifically correct, in the way in which the expert uses the phrase; but it is no less true, as a matter of law and of common observation and common sense, that the existence of these normal and usual accompaniments of age do not imply any lack of capacity to deal with one's own, or to make an intelligent disposition of property by grant, gift, or devise.''

In *In re Will of Richardson*, 199 Iowa 1320, at 1326, we said: ·

''The testimony of the expert witnesses who testified in answer to a hypothetical question—a class of testimony generally recognized as weak—is, in this case, of little or no value in determining the mental condition of the testatrix at the time the will was executed.''

This is particularly applicable to the instant case.

Very many cases of this character have been before this court. No two cases are identical in their facts, but, as indicating our holding under somewhat similar conditions to those shown in the instant case, see *In re Will of Byrne*, 186 Iowa 345; *In re Will of Kester*, 183 Iowa 1336; *In re Will of Renne*, 194 Iowa 938; *Seamans v. Gallup*, 195 Iowa 540; *In re Will of Jahn*, 195 Iowa 74; *Perkins v. Perkins*, 116 Iowa 253; *In re Estate of Shields*, 198 Iowa 686; *In re Estate of Cooper*, 200 Iowa 1180. The authorities might be multiplied extensively, but the foregoing illustrate the holdings of this court, and are ample authority for our conclusion that the court did not err in directing a verdict in behalf of the proponent on the ground of claimed mental incapacity of the testator.

II. The other ground of contest urged is alleged undue influence in procuring the execution of the will. The testimony to sustain the claim of undue influence is likewise insufficient to carry the case to the jury. We have repeatedly held that mere solicitation, request, or importunity is not sufficient, unless such influence is brought to bear as that the will of the testator is overcome by that of the person exercising the influence. There is nothing in the record in the instant case to show undue influence such as would warrant the court in submitting this question to

3. WILLS: undue influence: solicitation, etc.

the consideration of the jury. It appears that the testator had made a will in June of 1923, by which he disposed of his property to his nieces and nephews, but in a different proportion than provided in the will in suit. He was living at the home of his niece, Mrs. Gready Breson, and he talked with the latter's daughter, Mrs. Zwack, about changing his will. He produced his existing will, and read it to her and indicated the changes that he wished to have made. As we understand the record, she outlined the will as he desired to have it made, and took it to a stenographer, who put it into proper form. It was signed by the testator, and witnessed by his attending physician and by the husband of Mrs. Zwack. The doctor who witnessed the will testified that the testator was ill with pernicious anæmia, but that he was mentally competent to execute a will. We have read the record in regard to the circumstances surrounding the directing and executing of the will, and fail to find any sufficient evidence therein that would have justified the court in submitting the question of undue influence to the jury. There was some evidence regarding a controversy between the heirs in respect to the possession of a shawl. It is claimed that this took place in the presence of the testator, and that an attempt was made thereby to poison the mind of the testator against one of the contestants. The incident is too trivial to be regarded as of any consequence whatever in affecting the mind of the testator in the execution of his will. The order of the trial court in directing a verdict in behalf of the proponent was proper, under the record in this case. It must therefore be, and it is,—*Affirmed.*

DE GRAFF, C. J., and STEVENS and VERMILION, JJ., concur.