ALBERT WHITE et al., Contestants, v. JOHN WHITE, Special Administrator, Proponent.

No. 41176.

FEBRUARY 16, 1932.

Ed. Fackler, Jr., and E. L. Carroll, for contestants.

Lee R. Watts and F. C. Okey, for proponent.

FAVILLE, J.—The will in question was executed on August 21, 1930. The testatrix died September 6, 1930. As we gather from the record, at the time of her decease the testatrix was about 59 years of age. She had been twice married. By her first marriage she was the mother of five children, one of whom is the proponent in this action, and the remaining four are the contestants. Said children are all adults.

The testatrix left an estate consisting of about 198 acres of land, some live stock, and about $3600 in money.

By the terms of the will all the property of the testatrix, after the payment of debts and funeral expenses, was devised and bequeathed to her son, the proponent. The four contestants are married, and the proponent is unmarried. For approximate-

ly a year prior to the death of the testatrix, the proponent and the testatrix lived together in the home owned by the testatrix.

I. We have read the record. The only contention made as to undue influence is that the sole beneficiary under said will, the son John, exercised undue influence in securing the execution of said will. The will was drawn by an attorney, who also witnessed the will and was a witness for the proponent upon the trial. He testified that he had known the testatrix since he was a boy and on more than one occasion had been consulted by her with regard to her property and her business affairs generally; that she came to him from time to time and talked about her affairs and that he prepared the will. That he talked with her about it while she was seated in an automobile. No one was present. That the testatrix told the witness what she wanted in her will; that she desired to give all her property to her son John. The witness talked with her about the other children and she told him their names and where they lived and how she wanted to dispose of her property. The attorney drew the instrument and took it and the witness to the testatrix, who executed it. He testified that he asked her if she wanted to give it all to John and cut the other children out, and she said that she did. On cross-examination the attorney testified that the beneficiary John came to him and told him that the testatrix wanted her will made. She did not get out of the car and the attorney then went to the car and talked with her about it, and prepared the will and brought it to the testatrix to execute. It does not appear that the beneficiary made any suggestions whatever with regard to the contents of the will, or that he was present at the conversation between the testatrix and the attorney prior to the making of the will, or was there when it was executed and witnessed.

We have read all the evidence bearing upon the question of undue influence and are abundantly satisfied that the contestants failed to make a case establishing undue influence and that the court did not err in directing the jury to return a verdict in behalf of the proponent upon this issue.

II. There was a considerable amount of evidence offered by the contestants with regard to the claimed mental incapacity of the testatrix at the time of the execution of said will. It appears that at the date of the making of the will the

testatrix was in failing health and that some time later she was taken to a hospital, where she died within about three weeks after the execution of the will. As is not unusual in cases of this character, there was evidence offered for the purpose of attempting to show that in certain transactions or conversations with the testatrix she evidenced unsoundness of mind. We have examined all these instances and the various conversations with care, and, taking them all together, we are confident that they do not reveal such want of mental capacity as would justify a court in submitting that question to a jury, or permitting a verdict finding mental incapacity on the part of the testatrix to stand.

No useful purpose would be served by our attempting to set out in detail these various items of evidence. A few examples will suffice.

One witness testified that during the summer of 1930 he had a conversation with the testatrix about her farm and some hay ground, in which he said the testatrix wanted him to put up about 80 acres of hay, when in fact she had only about 15 or 16 acres of hay on the farm. He also testified that the testatrix told him she felt bad in her head.

Another witness testified to a conversation with the testatrix in which she said: ''I have a lot of hard luck, I have had nine children and there is only one left, this one here,'' referring to her son, the proponent, who at the time was standing by her side and she had hold of him.

A census enumerator testified to calling upon the testatrix in the latter part of April, 1930, and that at the time the testatrix made the remark ''I don't know nothing,'' and would not give her a list of her property.

There is evidence tending to show that the testatrix had had a slight paralytic stroke, and perhaps more than one.

There is also evidence tending to show two conversations between the testatrix and two other parties with respect to renting the testatrix's farm. The result of the transaction was that the testatrix did not rent the farm.

A chiropractor treated the testatrix beginning a few days before her death and stated that he treated her for cardiac dropsy with a slight dementia. He expressed no opinion as to her mental condition. Her speech was somewhat impeded and

there was evidence that she could not talk as readily as in her earlier years and that it was hard for her to write. She became feeble as early as March of 1930.

At the school election it appears that she wrote the word ''Johnny'' on an election ballot without writing any other name, there being two candidates to be voted for at the election, both of whom were named John, one of them being her son.

We have not attempted to detail the evidence in behalf of the contestants, but merely to give a general outline of part of it.

The doctor who had been her family physician for some twelve years before her death was a witness for the proponent. He testified that he attended the testatrix in 1929 and 1930; that she was bothered with arteriosclerosis and had been more or less for several years; that she was a large, fleshy woman, weighing 210 or 215 pounds; that he was called in the evening of April 21, and that she had symptoms of having had a slight stroke, that there was a sort of thickness of the tongue and she could not speak well and had a slight paralysis of one arm; that he took her blood pressure the next day and that it was not immediately dangerous; that he saw her off and on thereafter; that she had improved considerably a week or ten days after the 22d of April and talked rationally, and that he saw her about a week previous to her death and that she then talked rationally; and he expressed his opinion that she was of sound mind at the times he saw her.

The case does not present such a set of facts as would warrant the court in sending it to the jury or permitting a verdict on behalf of the contestants to stand if such verdict were returned by the jury. There is such a want of evidence tending to show mental incapacity that the court was not only justified, but in our opinion it was its duty to direct a verdict in behalf of the proponent upon this ground.

Citation of authorities bearing on the question of the requisite amount of proof to establish mental incapacity is necessarily of little value because of the divergent facts in the different cases. We have frequently held, in cases where the evidence tending to show mental incapacity was stronger than in the instant case, that it was the duty of the trial court to direct a verdict in behalf of the proponent.

As bearing somewhat on the question, see Perkins v. Perkins, 116 Iowa 253; In re Will of Kester, 183 Iowa 1336; In re Will of Byrne, 186 Iowa 345; In re Will of Renne, 194 Iowa 938; Seamans v. Gallup, 195 Iowa 540; In re Will of Jahn, 195 Iowa 74; In re Estate of Shields, 198 Iowa 686; In re Estate of Cooper, 200 Iowa 1180; In re Estate of Paczoch, 202 Iowa 849; Bishop v. Scharf, 214 Iowa ——.

III. Complaint is made of the ruling of the court in excluding certain evidence, especially that in regard to a claimed conversation had with the proponent after the execution of the will. The contestants contend that the proponent said: "Everything was fixed the way I wanted it with a will, mother gave me this house." The court sustained a motion to strike this evidence. It appeared that the conversation took place after the death and burial of the testatrix.

In view of the entire record in the case we do not think the action of the court constituted prejudicial error. We have gone over the entire record with the care the importance of the case demands, and we concur in the conclusion of the trial court that the contestants did not make a case for the consideration of the jury on the question of the mental incapacity of the testatrix, or undue influence on the part of the proponent.

It therefore follows that the order of the district court must be, and it is,—Affirmed.

WAGNER, C. J., and STEVENS, DE GRAFF, and ALBERT, JJ., concur.