## BLAKE *et al.* v. ROURKE *et al.*

1.  Will : UNDUE INFLUENCE : EVIDENCE.  In a proceeding to prove a will, where it was claimed that a son came from Kansas to influence the mind of the testator, it was proper to admit evidence having a tendency to show that his coming had another purpose.

2.  —— : —— : SUGGESTION OF SCRIVENER.  Where the testator deeded land to his wife, and on the same day, and as a part of the same transaction of disposing of his property, he also, at the suggestion of his scrivener, devised to his wife the same land, *held* that this fact tended to show neither undue influence nor a want of testamentary capacity.

74 519
91 431
74 519
d93 601
74 519
102 360
74 519
115 436
74 519
117 746
74 519
120 341
74 519
129 97
f130 186
74 519
135 137
74 519
f142 174

3. ————: INCAPACITY: BURDEN OF PROOF.   Where the evidence showed only temporary mental derangement of the testator's mind, and that at times when he suffered from paroxysms of pain, it was incumbent on the contestants of the will to show that it was executed during one of such paroxysms

4. ————: ————: OPINIONS OF NON-EXPERTS.   Non-expert witnesses cannot be allowed to give an opinion as to the mental condition of a testator on the day the will was made, when they did not see him, and could not testify to his condition, on that day.

5. ————: ————: RELATIVE WEIGHT OF OPINIONS OF EXPERTS.   The testimony of medical men of experience in such matters, given after a careful examination of the testator's mental condition, may properly be allowed more weight and consideration by the jury than that of non-professional witnesses.

*Appeal from Tama District Court.*—HON. L. G. KINNE, Judge.

FILED, MAY 24, 1888.

THIS action involves the validity of a written instrument purporting to be the last will and testament of Robert Blake, deceased. There was a trial by jury, and a verdict and judgment declaring the same to be a valid will. Defendants appeal.

*W. H. Stivers* and *J. G. Strong*, for appellants.

*Struble & Stiger*, for appellees.

ROTHROCK, J.—I. The instrument in question was executed in due form on the eleventh day of January, 1887, and Robert Blake died on the thirtieth day of the same month. He was the owner of a farm of two hundred and forty acres, and a small tract of timber land, and his personal estate consisted of live stock and grain and necessary farm implements and machinery. His family

1. WILL: undue influence: evidence.

consisted of his wife, one son, and five daughters. The youngest daughter was a minor, and resided with her parents. All of the other daughters were married, and doing for themselves. The will devised the two hundred and forty acres to his wife, fifteen hundred dollars to his son, five hundred dollars to the daughter who was a minor, and three hundred dollars to each of the other daughters, with the provision that, if the estate should not be sufficient to pay the three hundred dollar legacies, they should be reduced in a certain manner, and in proportions not necessary to be stated. These four adult daughters were therefore residuary legatees, and they are the parties who contest the will. The grounds upon which the contest was based were ( 1 ) that the will was procured to be made by undue influence ; and ( 2 ) that Robert Blake, at the time the will was executed, did not have testamentary capacity, by reason of being of unsound mind.

The court instructed the jury that there was no evidence of undue influence, and thereby relieved the jury of considering that question. The defendants complain of this instruction. Without going into a detailed statement of the evidence, it is sufficient to say that we are fully satisfied that this instruction was correct. There is no evidence that the wife or son of the deceased, or any other person, used any arts, influence or persuasion to induce the deceased to make the will. The basis of any claim in that behalf is founded upon the fact that they were living in the house on the farm with him when the will was made. All else is grounded upon the merest suspicion. It appears that the son of the deceased removed to the state of Kansas in the fall of 1886, and that he returned a short time before the will was executed. The widow was a witness in support of the will, and she was asked if she heard any conversation between the son and his father in relation to his staying or going back. The answer to the question was that her husband " spoke something about Enoch ( the son ) staying. If he did not like it there he should come back home, providing Mr. Rourke would sell out to

Blake v. Rourke.

him." Rourke was the husband of one of the daughters, and had leased the farm of the deceased. It is claimed that this testimony was immaterial. It appears to us that it was proper evidence upon the issue of undue influence. It tended to show that the son did not come back from Kansas for the purpose of influencing the deceased to make a will favorable to him.

II. It appears that on the same day that the will was made deceased made a deed to his wife, in which he conveyed the farm to her absolutely. Immediately after making the deed, he made and executed the will in which he devised the same land to his wife. It is claimed that this avoided the will, because it was not the act of the testator, for the reason that the evidence shows that the land was put in the will at the suggestion of the person who drew the will; and the court was asked to instruct the jury that if they found such to be the fact, then they should find that the will was not valid. This instruction was correctly refused. The deed and the will were parts of one transaction. They were both in the nature of testamentary dispositions of the estate of the deceased; and the deed merely emphasizes the fact that the deceased intended that his wife should have the farm; and it was wholly immaterial whether, after making the deed, the same property was included in the will at the suggestion of his confidential adviser, whom he had called to put his wishes in regard to his estate in proper form. This fact neither tended to show a want of testamentary capacity, nor undue influence.

*2. ——: ——: suggestion of scrivener.*

III. It appears from the evidence that the deceased was in feeble health for several months before his death. His attending physician testified that "he had a complication of troubles; had prostatic trouble, kidney trouble, and all the digestive organs were involved." The evidence shows that at times he suffered great pain, and on one or two occasions in these paroxysms of pain, as one of the witnesses expresses it, "he did not know anything." It is not claimed that he had any disease of the brain

*3. ——: incapacity: burden of proof.*

which directly affected his mental faculties. It is claimed that the complication of diseases with which he suffered so weakened his mind and intellect that, at the time the will was made, he did not have testamentary capacity. There can be no question, under the evidence, that the deceased was capable of making a valid will except at such times as he was suffering from the paroxysms of pain above mentioned. To hold otherwise would be in plain conflict with all the evidence, including even that of his attending physician, who was called as a witness by the contestants. It was therefore incumbent on the contestants to prove that the will was made while the deceased was suffering with one of these temporary derangements of the mind. It was not incumbent on the proponents of the will to prove that the mind of the deceased "was restored so as to be sound" when the will was made, as claimed by appellants in an instruction to the jury, asked and refused. The law is so well settled as to be fundamental and elementary that the rule contended for by appellants has no application where the mental derangement is merely fitful and temporary.

IV. A great many objections were made to rulings of the court upon the admission and exclusion of evidence. They relate in part to the refusal of the court 4. ——: ——: opinions of non-experts. to allow non-expert witnesses to testify as to their opinion of the mental condition of the deceased on the day of the execution of the will. These rulings were correct. The witnesses were all allowed to give their opinion of his condition when they last saw him before the will was made, and this was all they could properly give an opinion upon. Other objections were to the rulings of the court upon the testimony of the parties as to personal conversations with the deceased. We have examined these objections carefully, and conclude that, under section 3639 of the Code, which excludes all such personal transactions, the rulings of the court were correct.

V. Complaint is made of an instruction to the jury which directed them that "the testimony of medical

5. ——:——:
relative
weight of
opinions of
experts.

men of experience in their profession in this class of cases, after a careful examination of the testator's mental condition, touching the mental condition of the deceased at the time of the execution of the will in question, may be by you given more weight and consideration than the testimony of non-professional witnesses." This instruction, or, rather, one similar to it, was approved by this court in *Meeker v. Meeker, ante,* p. 352.

VI. Objections are made to other instructions and to the refusal to give instructions requested by appellants. We discover no error in these rulings. It appears to us that the instructions given by the court fully covered every point in the case, and that they correctly state the law applicable to the evidence.

VII. It is claimed that the verdict is contrary to the evidence. We think otherwise.

AFFIRMED.