IN THE MATTER OF THE ESTATE OF JULIUS LEFEVRE, DECEASED. WILLIAM RENAUD ET AL., PRO-PONENTS, v. ROSE PAGEOT ET AL., CONTESTANTS.

*Will—Mental incompetency—Evidence—Declarations.*

1. On the contest of a will on the ground of the mental incapac-ity of the testator, the following testimony is inadmissible:

   *a*—Statements made by one of the legatees, prior to the death of the testator, that he was crazy.

   *b*—The statement of a party who, on an occasion not long prior to the death of the testator, was sent for to draft his will, and who declined to go, that his reason for declining was that he did not consider the testator capable of making a will; such testimony being clearly hearsay of the most dam-aging kind.

   *c*—Acts or statements of the testator tending rather to show that he was irritable than incompetent.

2. It is competent to show the expressed declarations of the tes-tator as to his intended disposition of his property, even

though made a considerable time (in the present case, 13 years) before the making of the will, and, in the absence of proof of some change in purpose, the remoteness of time when the declarations were made bears rather upon the weight of the testimony than its admissibility.

Error to Wayne. (Hosmer, J.) Argued October 9, 1894. Decided December 7, 1894.

Appeal from the probate of a will. Proponents bring error. Reversed. The facts are stated in the opinion.

*John G. Hawley,* for appellants.

*James H. Pound,* for contestants.

MONTGOMERY, J. The will of Julius Lefevre was contested on the two grounds of mental incapacity and undue influence. At the close of the testimony the circuit judge withdrew the latter question from the jury. The jury found against the will on the ground of mental incapacity, and the proponents appeal.

1. It is contended that there was no such evidence of mental incapacity as warranted the court in submitting the case to the jury. No good purpose would be served by setting out the testimony at length, but a careful examination of the record convinces us that there was sufficient evidence to justify the submission of the case to the jury.

2. Lucy Renaud was named as one of the legatees in the will, and contestants were permitted to offer testimony of statements made by her before the decease of Lefevre, to the effect that he (Lefevre) was crazy. This question is ruled by the case of *O'Connor v. Madison,* 98 Mich. 183, and cases cited at pages 190–192.

3. Testimony was given by a witness (Henry Kunze) to the effect that on an occasion not long prior to Lefevre's

death a messenger came to one Charles F. Peltier, a partner of the witness, with a request that he (Peltier) go to decedent's boarding house, and draft a will for him; and the witness was further permitted to testify that Peltier declined to go, and gave as a reason that he did not consider Lefevre capable of making a will. This was clearly hearsay of the most damaging kind. It enabled the contestants to give Mr. Peltier's unsworn opinion to the jury, and this without any statement of the facts upon which it was based. The impropriety of admitting such testimony could not well have been better demonstrated than it was in the present case. Mr. Peltier was himself afterwards called as a witness, and testified that he had no recollection of having talked with Lefevre for some time before his death, and that it might have been five years before he died, and in his sworn testimony did not show that he had any such knowledge as would have warranted the contestants in asking his opinion as to the mental incapacity of the deceased; and yet his unsworn opinion, which must have been based on hearsay, was before the jury.

4. Numerous other errors are assigned, most of which relate to questions which are not likely to arise on another trial, and which do not, therefore, require discussion. It is proper to say, however, that in some instances testimony of acts or statements of deceased was admitted, which tended rather to show that he was irritable than incompetent. Of this class were his expressions of opinion about Fred Moran and Dr. McGraw. It appears that litigation had arisen in which he was interested and opposed to Mr. Moran, and his expressions as to Dr. McGraw were expressions relating to his competency as a physician. However ill-judged his expressions may have been, they did not furnish evidence of mental weakness. As was said in *Prentis v. Bates*, 93 Mich. 234, 243:

"Where the testimony of the witness only goes the length of showing acts which are entirely consistent with sanity, and which have not the slightest tendency to show insanity, it would be a dangerous rule which would permit his opinion to be received."

We think the cases cited, and other decisions of this Court, furnish a sufficient guide to control upon a new trial of the case.

5. We think it was competent to show the expressed declarations of the deceased as to his intended disposition of his property, even though made a considerable time before the making of the will. It is difficult to fix any precise period as the limit in such cases. Testimony which is said to have had a similar tendency in *Fraser v. Jennison,* 42 Mich. 206, went no further than to tend to prove the existence of friendly relations between the deceased and his relatives. This testimony, standing by itself, might well have been held too remote, but, in the absence of proof of some change in purpose, the remoteness of time when the expression of such an intention is made bears rather upon the weight of the testimony than its admissibility.

For the errors pointed out, the judgment will be reversed, with costs, and a new trial ordered.

The other Justices concurred.