LAWRENCE D. FOTHERGILL ET AL, Appellees, v. OTTO FOTH-
  ERGILL ET AL, Appellants, and THOMAS FOTHER-
  GILL ET AL, Defendants.

**Wills:** MENTAL INCAPACITY: BURDEN OF PROOF: EVIDENCE. Where
1 there is no claim of general derangement of the mind, the one
  assailing a will on the ground of mental incapacity to make it,
  has the burden of showing incapacity at the very time the will
  was executed. Evidence held insufficient to establish incapacity
  and a submission of the issue was erroneous.

**Undue influence:** EVIDENCE. Opportunity and disposition of a
2 legatee to procure a will favorable to him are not alone suffi-
  cient to establish undue influence. Evidence reviewed and
  held insufficient to invalidate a will on the ground of undue
  influence.

**Evidence:** ADMISSIONS. The admissions of a beneficiary under a
3 will are not competent evidence in an action to set aside a
  will on the ground of undue influence.

**Evidence:** SUFFICIENCY OF OBJECTION: REVIEW. One who has ob-
4 jected to a certain class of evidence and secured a ruling is
  not required to repeat the objection to the same evidence sub-
  quently offered, to entitle him to a review of the question of
  its admissibility.

**Submission of unsupported issue.** It is presumptively erroneous to
5 submit an issue upon which there is no evidence.

*Appeal from Polk District Court.*— HON. W. H. MCHENRY,
                    Judge.

TUESDAY, NOVEMBER 21, 1905.

THIS is an action brought to set aside the will of John
Fothergill, deceased, upon the grounds of mental incapacity
and undue influence. The defendants are the executor and
some of the beneficiaries under the will. The case was
tried to a jury, resulting in a verdict for plaintiffs, and de-

fendants Otto Fothergill, Francis and Septimus Fothergill, and Ellen Harris, appeal.  *Reversed.*

*Sherman De Wolf* and *Boies & Boies,* for appellants.

*Dale & Harvison* and *Hugh Brennan,* for appellees.

DEEMER, J.— The deceased, John Fothergill, on the 8th day of September, 1897, made and executed what purported to be his last will and testament, in which he devised his property to a stepson, Henry A. Perrin, to his brothers, Thomas, Otto, Francis, and Septimus Fothergill, and to his sister, Ellen Harris. He also nominated Otto Fothergill as the executor of his will. He had prior to that executed another will in which he devised his property to his wife (then living); Robert (now dead, and the father of the plaintiffs), a brother; Henry A. Perrin, the stepson; to his brothers and sisters above named; and to the children of a deceased sister, Francis Duckett. This will was executed in July of the year 1889. After its execution, and before the making of the second will, his wife and his brother, Robert, died.

The last will was executed while testator was in a hospital in the city of Des Moines, suffering from an attack of what was pronounced " malarial fever." On the day of its execution testator was very weak physically, and the jury might have found that on the previous day his mind was wandering, and that he was then incapable of making a will. But the testator apparently recovered from this sickness, and about three weeks before his fatal illness went to Grundy county, where he died on the last day of October in the year 1901. At that time he remembered the execution of the will while at the hospital, and asked his brother Otto, who had taken it from Des Moines, to see it. It was given him, and, after looking it over, he handed it back to his brother, Otto, remarking that it was all right, and it remained in Ot-

to's possession until after John's death, when he, Otto, filed it with the clerk of the Polk county court.    This last will was duly admitted to probate, and the executor named therein was appointed and qualified.

This is an independent action at law to set aside the will, upon the grounds above stated; it being charged that defendant Otto Fothergill is the person who unduly influenced the testator into the making of the instrument.    The case was submitted to a jury on both issues; and defendants now contend, as they did in the district court, that there was not sufficient evidence of either undue influence or of mental incapacity to take the case to a jury.    Again it is contended that the trial court was in error in submitting both issues to the jury, in the event we find either was unsupported by the testimony.    Further complaint is made of some rulings on evidence, and of an instruction given by the trial court.

I.    The only evidence of testator's unsoundness of mind at the time the will was executed, is that he was a drinking man, and was sometimes intoxicated; that he was suffering from malaria when taken to the hospital; that he had a low fever when first taken to that institution, which was about a week before the will was executed; that his mind wandered the day before the will was signed, and that he was very weak physically from the time he was taken to the hospital, until the will was drawn.    There is no claim that testator was demented, or that he had any general mental breakdown.    After leaving the hospital, he attended to his business as usual, and he lived more than four years after the will was executed.    This further showing was made as to mental incapacity.

1. WILLS: mental incapacity: burden of proof: evidence.

A witness who rented John Fothergill a house went to the hospital every day or two to see him, and he testified as follows:

" While John Fothergill was at the hospital, I would go in to visit him, go to the bedside, and take him by the hand, and a portion of the time he would recognize me, and

at other times he didn't. He would not have anything to say. I would ask him how he felt. He would make some kind of a reply, ' Fairly well,' or ' A little better,' or something like that. I would not stay only a short time, probably ten or fifteen or twenty minutes. I didn't urge him to talk. I thought he was too sick to be talked to. I was at the hospital the same day or the next day after the will was executed, and he was a sick man yet in my estimation. I simply shook hands with him, and probably he would turn his head and doze off and go to sleep again. He didn't seem to want to say anything. I don't know whether his mind was wandering or not. Physically, he was very weak. I think he could raise his hand. He was bleached out, very pale, and was considerably emaciated. He was at the hospital two or three weeks. From my observation of John Fothergill, taking the facts I have testified to, I would say that about the 6th day of September, 1897, I wouldn't have considered him of sound mind."

Cross-examination: "I visited John Fothergill often, sometimes before noon and sometimes after noon. Was there every day or two. I simply went in and spoke to him, as a rule he would·speak back, and then he would lie over as if tired and not say much. He never talked as if he was out of his head when I was present. He didn't talk in any way to amount to anything. He was very feeble and weak. My opinion that he was of unsound mind is based on the fact that he was very weak physically." On redirect examination this witness said: "I transacted business for John Fothergill for a number of years. I turned over some money to Otto there that I had collected. I collected some money for John· while he was at the hospital, and turned it over to Otto. I don't remember the amount. I didn't do any business with John while he was at the hospital, and didn't attempt to do any. I didn't think he was competent to do business, and that is why I didn't attempt to do business with him."

This is all the testimony bearing upon the issue of mental unsoundness, and it is manifest that it was not sufficient

to take the case to a jury, especially in view of the unequivocal testimony of many disinterested witnesses, including the doctor and nurse, to the effect that the testator was of sound mind when the will was executed.    There being no claim of general derangement of mind, the burden was upon the plaintiffs to show that, at the very time the will was executed, testator was not of sufficient mental capacity to make it. *Blake v. Rourke,* 74 Iowa, 522.    The only testimony offered to establish this proposition is that which we have just quoted.    To our minds it was insufficient to take the case to the jury on this issue.    The witness was a nonexpert, and it is clear that he based his opinion as to unsoundness upon testator's physical condition.    Moreover, he did not attempt to state his condition of mind on the day the will was executed, but says that " about the 6th day of September he wouldn't have considered him of sound mind."    The facts recited by him upon which he gave his opinion were insufficient to establish unsoundness of mind, and the witness' opinion based thereon is of no more value than the facts themselves would be without his opinion.    Again the witness when asked to give the basis for his opinion said that it was testator's physical weakness.    Verdicts should not be allowed to stand upon such testimony, and the issue of mental unsoundness should not have been submitted to the jury.

II.    The testimony as to undue influence is but little if any stronger than that relating to unsoundness of mind. Otto Fothergill came to Des Moines in response to a telegram announcing his brother's severe illness.    Short-

2. UNDER INFLU-
ENCE: evi-
dence.
ly after his arrival, he had the brother removed to the hospital.    After his removal to the hospital, Otto went to an attorney and had him draw the will in question, which was taken to the hospital in its completed condition, prepared from data furnished by Otto, and there read over and explained to John Fothergill in the absence of Otto, by the attorney who drew it; and it was thereupon duly signed and executed by the testator; the witnesses being the nurse

and the doctor who were attending him.   Otto showed the will before it was signed by the testator to two witnesses, and to one of them read it over.   He, Otto, as the witness says seemed pleased with its terms.   To other witnesses he explained why the heirs of Frances Duckett, and Robert Fothergill were not remembered, and the jury might have found that some of these explanations were unsatisfactory, if they had been admissible in evidence.   After the will was signed and witnessed, it was sealed up and taken by Otto to his home in Grundy county, where it remained until testator's death.

As already stated, testator called for and again saw the will in Grundy county, and he made no signs of displeasure with the terms thereof.   Otto and some of the other legatees received something more under this will than they would have received under the former one, and no reason is shown why testator did not remember some of his nephews and nieces.   But this does not establish undue influence.   If there be any evidence of undue influence it is wholly circumstantial; and such as is presented is as consistent with proper conduct on the part of Otto, as it is with the theory of undue influence.   Opportunity and disposition to procure a will, which is favorable to one of the legatees is not sufficient evidence of itself of undue influence.   Indeed, there is not an admissible circumstance in the case, which is not as consistent with one theory as the other.

Counsel for appellees rely to some extent upon declarations made by Otto Fothergill, one of the beneficiarise under the will, to the effect that the reason why plaintiffs, the heirs

3. EVIDENCE: admissions. of Robert Fothergill, were not remembered was because one of the plaintiffs had undertaken to make him, Otto, pay a note a second time.   This testimony was objected to, on the ground that " it calls for an admission against the interests of Otto Fothergill, which is not admissible against any other legatees named in the will in controversy."   The trial court ruled that the testimony was

competent, "not only as against Otto Fothergill, but also all the rest."

There is some conflict in the authorities regarding the admissibility of this sort of evidence, but we have consistently held it inadmissible, and such seems to be the current of judicial opinion. See *In re Ames' Will,* 51 Iowa, 596; *Dye v. Young,* 55 Iowa, 433; *Hertrich v. Hertrich,* 114 Iowa, 644; *Lundy v. Lundy,* 118 Iowa, 445. See also, *Shailer v. Bumstead,* 99 Mass. 112; *Renaud v. Pageot,* 102 Mich., 568 (61 N. W. Rep. 3); Gardner on Wills, p. 142, and cases cited.

Appellees attempt to meet these cases by a claim that even if there be error, it was waived by the subsequent introduction of the same kind of testimony without objection

4. EVIDENCE: sufficiency of objection: review.

by the defendants. It is true that defendants did not object at the time this subsequent testimony was offered; but they did move to strike it out, and their motion was of course overruled. But they were not required to repeat their objections after they had once fairly presented the matter to the trial court and secured a ruling. *Metropolitan Bank v. Commercial Bank,* 104 Iowa, 682.

We are very clear that the issue of mental unsoundness should not have been submitted to the jury. This being true, the case should be reversed even though there were no other

5. SUBMISSION OF UNSUP-PORTED ISSUE.

prejudicial errors. *Lingle v. Lingle,* 121 Iowa, 123; *Perkins v. Perkins,* 116 Iowa, 253. Appellees attempt to meet this by a claim that as defendants did not ask for a special verdict, they are in no position to complain. But this is not true. To submit an issue upon which there was no evidence is clearly erroneous, and presumptively prejudicial. This for the plain reason that there is no way for determining upon which issue the jury found. *In re Betts,* 113 Iowa, 111, relied upon by appellee is not in point.

III.   Recurring again to the issue of undue influence,

we cite in support of the conclusion reached *Parker v. Lambertz,* 128 Iowa, 496.

For the errors pointed out the judgment must be, and it is, *reversed.*