J. R. CASAD, Appellant, v. EDITH C. RIPLEY ET AL.

**Wills:** MENTAL CAPACITY: UNDUE INFLUENCE: EVIDENCE. Where there is no claim of permanent mental disability it must be shown that at the very time of the execution of a will the testator had not sufficient mental capacity to make a will. Evidence held insufficient' to show either mental unsoundness rendering the testator incapable of making a will, or undue influence in the execution of the same.

**Same.** Opportunity and disposition are not alone sufficient to establish undue influence in the execution of a will.

**Same:** EVIDENCE: DECLARATIONS OF A LEGATEE. The declarations of a legatee made prior to the execution of a will are incompetent in an action to set aside the probate of a will on the ground of mental incapacity, where there was nothing in the record tending to show that plaintiff was prejudiced by their exclusion.

*Appeal from Cedar District Court.*—HON. F. O. ELLISON, Judge.

WEDNESDAY, JANUARY 19, 1910.

ACTION to set aside the probate of a will on the grounds of mental incapacity and undue influence. There was a directed verdict for the defendants. The plaintiff appeals.—*Affirmed.*

*R. R. Leech* and *Jamison, Smyth & Hann,* for appellant.

*John T. Moffit, Dawley & Wheeler,* and *J. H. Preston,* for appellees.

SHERWIN, J.—John W. Casad died July 27, 1907. He left surviving him a widow, Ida L. Casad, and two children, J. R. Casad, the plaintiff herein, and the defendant Edith C. Ripley. July 8, 1907, he executed a will, by the terms of which, after making a few minor bequests, he devised the remainder of his estate to trustees named in the will, and directed that the net income from the estate devised to them be paid to his wife, Ida L. Casad, during her life. He further directed that, upon the death of his wife, the net income from the estate should be paid in equal parts to his daughter and son for the period of two years thereafter. The will then provided as follows:

I direct that two years after my wife's death, my trustees aforesaid shall divide the trust property, fund or estate as near as may be into two equal parts. The judgment of my trustees as to the division to be final. My trustees shall thereupon transfer or deliver to my daughter, Edith C. Ripley, one of said parts, to be her own, absolutely.

### Item X.

I direct that my trustees aforesaid shall take and hold the remaining one-half, or one part, of the trust property, fund or estate, collect and receive all rents, issues, profits

and other income thereof, and after paying the necessary expenses of the trust, insurance, taxes and repairs, to pay over the annual net income in regular quarterly payments to my son, John Russell Casad, during his life.    And upon the death of my son, John Russell Casad, trustees are directed to transfer, convey, and deliver all the property, trust funds or estate remaining in their hands unto my daughter, Edith C. Ripley, for her own use, absolutely.

## Item XI.

No beneficiary shall have any right or power, by draft, assignment or otherwise, to anticipate, mortgage or otherwise incumber in advance any installments of income.

The trustees named in the will were also appointed executors thereof, and early in August, 1907, they filed the will with a petition asking for its probate.    Proper notice of such application was given, and the plaintiff herein filed a contest, alleging that the will was procured by undue influence, and that his father was mentally incapable of making a will.    The issue thus joined came on for trial in February, 1908, when it was admitted by the contestant that the instrument purporting to be the will of John W. Casad was duly executed.    The trial then proceeded until the contestant had introduced all of his testimony in support of his contest and rested.    The proponents then moved for a directed verdict, alleging, among other grounds, therefor, that there was insufficient evidence to show either unsoundness of mind or undue influence. The motion was argued at length, and the court announced that it would be sustained, whereupon the contestant withdrew his objections to the probate of the will.    The will was then duly admitted to probate, and thereafter this action was commenced.    The defendants pleaded the former trial and the probate of the will thereafter as an adjudication.    Upon the issue thus joined, the plaintiff introduced his evidence, and the defendants introduced the

record of the former trial and the probate of the will, and then moved for a directed verdict on the grounds of former adjudication, and because there was insufficient evidence to show undue influence or unsoundness of mind at the time the will was executed. The motion was sustained generally.

Counsel on both sides argue at length the question whether there was an adjudication by the former trial. We do not think it necessary to determine that question. We are fully satisfied that the will should be sustained because of the lack of evidence to show mental incapacity or undue influence, and prefer to base our decision on the merits of the case rather than on the plea of a former adjudication.

J. W. Casad was about seventy-seven years old when he died. For many years and until 1879 he was engaged in the clothing business in which he was successful. In 1879 he went into the banking business, where he was actively engaged until 1892. At that time he retired from active participation in the banking business, but continued his connection therewith until his death, and spent a part of his time there. He left an estate worth over $90,000, and during his life he had given each of his two children over $13,000. For some seven or eight years immediately preceding his death his health had been poor, and for several months before his death he was afflicted with cancer of the stomach, which finally caused his death. Up until within a month or six weeks of his death he was able to be about town, and was frequently at his son's store, where he had assisted more or less until about a year before he died. There is absolutely no evidence of unsoundness of mind when the will was made, except the inference to be drawn from the testimony of one or two physicians that in their judgment a man who was afflicted with cancer of the stomach would necessarily be so exhausted as to be unable to concentrate his mind on one subject long enough to make

such a will as was made by the deceased. It is true the evidence shows that Mr. Casad was at times given opiates to relieve his pain, but there is no pretense that he was not at all other times in full possession of all of his mental faculties, or that he was under the influence of the drug when he directed the will in question. Indeed, the will itself shows much more than usual deliberation and much careful consideration and thought for his wife and children. The plaintiff herein had been unsuccessful in business notwithstanding his father's advice and financial assistance. As late at least as May 24, 1907, he acknowledged having received from his father at various times within the preceding years sums aggregating, with interest thereon at five percent, $13,800. The will provided him a safe and sure income during the rest of his life after his mother's death, and kept the income bearing property where it could not be lost through misfortune or otherwise. Instead of showing mental incapacity, the record conclusively, and the will in particular, shows a clear and farsighted business sagacity, corresponding with the ability which had enabled the testator to accumulate a snug little fortune for his family.

The record is equally as barren of evidence tending to show that undue influence entered into the provisions of the will. The testator and his wife lived with the defendant and her husband, and they were as kind and indulgent as children should be. But such fact can not be the basis of undue influence. It is shown that the deceased was not particularly fond of the plaintiff's wife, but that his relations with the plaintiff were always of the best. The record shows conclusively that the will in question is the product of a keen and competent brain, and that it was made with a full realization of what would be for the best interest of the plaintiff. It is a familiar rule that, where there is no claim of permanent mental derangement, it must be shown that at the very time the will was executed

the testator had not sufficient mental capacity to make it. *Blake v. Rourke,* 74 Iowa, 519.  It is also well settled that opportunity and disposition to influence the testator in disposing of his property is not sufficient to establish undue influence.  *Fothergill v. Fothergill,* 129 Iowa, 93.

The plaintiff offered to prove certain statements claimed to have been made by the defendant prior to the execution of the will.  They were incompetent under the rule often announced by this court.  *Hertrich v. Hertrich,* 114 Iowa, 644; *Fothergill v. Fothergill, supra.*  But, if the rule were otherwise, there would be no error in the ruling because there is no evidence in the record tending even to show that the plaintiff was prejudiced thereby.

The judgment is right, and it is *affirmed.*