IN RE ESTATE OF JOSEPH N. COOPER.

. J. P. COOPER et al., Appellees, v. JOSEPHINE P. BRIDGE et al.,
Appellants.

**WILLS:** Testamentary Capacity—Evidence—Erroneous Exclusion—
1 Harmless Error. On the contest of a will, it is error, on the issue of testamentary capacity, to exclude the opinions of qualified witnesses as to the mental soundness of testator and testimony tending to show increasing feebleness and childishness with advancing years; but such error becomes quite immaterial when the testimony admitted *and rejected* fails to warrant a finding that testator was so lacking in mental capacity when the will was executed that he *did not* (1) intelligently know the property possessed by him, (2) intelligently know the natural objects of his bounty, and (3) intelligently exercise judgment and discretion in the disposition of

his said property.  (See Book of Anno., Vol. 1, Sec. 11846, Anno. 39 *et seq.*)

**EVIDENCE:  Opinion Evidence—Unqualified Expert.**  A physician may
2  not testify that a person was, in his opinion, mentally unsound, on
the sole·basis that he had at times casually noticed the person on
the street, but had paid no attention to, or ever made any exam·
ination of, his mental condition.  (See Book of Anno., Vol. 1, Sec.
11846, Anno. 99 *et seq.*)

**WILLS:  Undue Influence—Burden of Proof.**  He who alleges that a
3  will was the result of undue influence must establish (1) the undue
influence, and (2) that the undue influence operated on the mind
of the testator at the very time the will was executed,—in fact,
that the will was the will of the undue influencer, and not the will
of testator.  (See Book of Anno., Vol. 1, Sec. 11846, Anno. 202.)

·  Headnote 1:  22 C. J. pp. 599, 600, 668; 40 Cyc. pp. 1004, 1036, 1038.
Headnote 2:  22 C. J. p. 670; 40 Cyc. p. 1036.  **Headnote 3:**  40 Cyc. pp.
1144, 1145, 1150.

*Appeal from Marshall District Court.*—B. F. CUMMINGS, Judge.

DECEMBER 15, 1925.

CONTEST on the probate of the will of Joseph N. Cooper.
From a directed verdict in favor of the proponents the contest-
ants appeal.—*Affirmed.*

*E. N. Farber* and *H. C. Lounsberry,* for appellants.

*G. A. Mote, F. E. Northup,* and *C. H. E. Boardman,* for
appellees.

ALBERT, J.—Contest was entered against the will of Joseph
N. Cooper, on the grounds of mental incapacity and undue in-
fluence.  This case has been before this court, and the opinion

1. WILLS: testa-
mentary capac-
ity: evidence:
erroneous ex-
clusion: harm-
less error.

thereon may be found in 196 Iowa 116.  On a
retrial, contestants, in examining nonexpert wit-
nesses, offered to show that at certain times the
deceased appeared to be childish.  Witnesses
were also asked as to the mental condition and memory of the
deceased.  These two lines of testimony were successfully ob-

jected to, and it is now urged that the district court erred in excluding these.

As the record stood at the time these lines of testimony were offered, they should have been admitted. *Smith v. Hickenbottom,* 57 Iowa 733; *Parsons v. Parsons,* 66 Iowa 754; *Manatt v. Scott,* 106 Iowa 203; *In re Estate of Goldthorp,* 94 Iowa 336. Under this line of authority, it is apparent that the lower court erred in excluding both the indicated lines of testimony. In the testimony of Dr. M. L. Allen, this question was asked:

"Now you have described what you observed of his physical condition, as well as his mental condition, as the years progressed, and you may state whether or not, during the later years of your acquaintance with him, he became childish; also, what did you observe of his physical and mental condition, as the years progressed, and during the later years of your acquaintance with him, with respect as to whether he appeared to be senile?

"Q. What did you say appeared to be his condition mentally during the later years of his life, as you observed it, as to whether or not there was any process of decay? A. You mean mental decay? A. Yes."

Objection was interposed to this last question, as to all previous questions, and sustained. The doctor was asked this further question:

"Well, now, during the later years that you knew him,—say the last three or four years of your acquaintance with him,—what would you say as to his mental condition being sound or unsound,—which was it?"

Objection to this question was also sustained. Under the rule above cited, it was error on the part of the court to refuse to permit the witness to answer these questions.

As above noted, the district court directed a verdict in favor of the proponents herein, and such ruling is assigned as error. We are, therefore, confronted with the situation of determining whether or not the evidence already admitted in the case, plus the evidence offered along the line above indicated, would have been sufficient to take the case to the jury. The writing offered consisted of the original will, bearing date of June 4, 1913, together with an additional writing, dated May

13, 1919. Joseph N. Cooper died on May 28, 1919. The testimony, in so far as mental incapacity and undue influence are concerned, consists of nonexpert testimony, aside from that of Dr. Allen, the sum total of which is that these various witnesses knew the decedent from a time antedating the making of the original will. They were his neighbors, friends, and associates, and they testify to his various eccentricities, peculiarities, and physical disabilities; that he was 82 years of age when he died; that he was of a nervous and excitable temperament; that at one time he had an accident which compelled him to walk with crutches, and later with a cane; that he was stooped with age in the later years of his life, and lived principally in the past; that he repeated stories frequently of the early days; that through all the years of his life he played the fiddle, danced the jig, and attempted to play tunes on a turkey bone; that he was given at times to talking to himself, and as the years advanced, he grew weaker, naturally; that sometimes he had dizzy spells; that he was rather arbitrary with the members of his family, and on one occasion threatened to shoot one of the boys; that on some occasions he did not recognize the witnesses when he met them; that he was forgetful,—and much other testimony along this line, the most of which goes wholly to the question of his physical condition. The question is whether the testimony of these various witnesses, which we have heretofore held to be admissible,—to wit, that, as the years advanced, his mind became more feeble, that he grew childish, and that, in the opinion of the witnesses, he was of unsound mind,—coupled with the inequality of the distribution of his property among his children, would be enough to take the question of his mental capacity to the jury. Before answering this question, we have another question to consider.

After testifying that he is a physician and surgeon, Dr. Allen states that at one time he was called to wait upon the deceased for some physical ailment. Aside from this, he never

2. EVIDENCE: opinion evidence: unqualified expert. made any examination of the deceased, or any observation to determine his mental condition. He saw him and observed him as he saw and observed other people on the street or in his business, but does not claim that he gave any special attention to the deceased as

to his mental condition. He described largely the physical condition of testator. He was also asked whether, in his opinion, the deceased was of sound or unsound mind. The testimony of this witness was offered in the case, and it appears that he would have answered, if permitted, that the deceased, during his later years, became childish, and appeared to be senile; that he thought there was mental decay. As to the condition of his mind, he said, "I wouldn't consider it sound." Under this record, we do not feel that the testimony of Dr. Allen rises to the dignity of expert testimony.

Tendered evidence of the nonexpert witnesses shows that, if permitted to answer, they would have said that the deceased grew childish and more feeble in mind. Several of them would have testified that they considered him of unsound mind.

The general testimony shows that the deceased came to Marshall County in an early day, suffered the trials and tribulations of the pioneers of Iowa, and accumulated some land in Marshall and Cherokee Counties and some personal property. He lived on a farm for many years, and raised his family. He lost his wife, and married a second time. After leaving the farm, he moved to Colfax, and from there to Marshalltown. At various times he drew different wills, prior to the execution of the one in controversy. At the time the will in controversy was drawn, he went to his lawyer, dictated the list of property he possessed, and told the scrivener of the will the description of the property and the disposition he wished to make of it. After the will was prepared, it was read to him, and, being satisfactory, was executed by him. There is no showing that he was given to the use of intoxicating liquors, and no showing that he was afflicted with the diseases incident to advancing years, excepting that Dr. Allen says that he saw evidences of senility. There is no claim that his talk was irrational, or that his thoughts were disconnected. He was probably peevish and childish, and made himself obnoxious by continuously repeating the stories of his early life. All these matters go with advancing years, and are not unexpected when it is considered that this man was 76 years of age when he made the first will, and 82 when the codicil was made.

There is nothing in the record to show that the testator was

so lacking in mental capacity as to be unable to intelligently remember and identify the property he possessed and the natural objects of his bounty, and to intelligently dispose of the same. This is the ultimate measure of mental capacity that the law requires of a testator. Will contests must turn largely upon the facts incident to each case, and it is difficult to lay down a rule in such matters. In *In re Estate of Shields*, 198 Iowa 686, we said:

"Time and again this court has declared that mere old age or some deterioration in physical or mental powers, or peevishness, childishness, and eccentricities, are not alone sufficient to carry to a jury the question of mental unsoundness on the part of a testator. The final question in such a situation as is presented to us is whether or not there is sufficient evidence offered in behalf of the contestant to take to the jury the question of whether or not the testator was so lacking in mental capacity at the time of the execution of the will as to be unable to intelligently know the property which he possessed and the natural objects of his bounty, and to intelligently exercise judgment and discretion in the disposition of the same. When measured by such a standard, the evidence in behalf of the contestant is so utterly lacking in this respect that it did not present a matter for the consideration of the jury."

According to this standard, it is apparent that the contestants have not borne the burden placed upon them by the law, and for that reason the motion to direct a verdict for proponents was rightfully sustained by the court.

The question of undue influence was also brought up in the case, and some evidence given to support such contention. On this question mental weakness was to be considered as an element. The burden of proving undue influence

3. WILLS: undue influence: burden of proof.

is on the party alleging it, who must show that it operated on the mind of the testator at the very time the will was executed, to such an extent that the will was the result thereof. *In re Estate of Townsend*, 128 Iowa 621; *Gates v. Cole*, 137 Iowa 613. We would not be warranted in setting out the testimony on this branch of the case. Suffice it to say that, by the well recognized rule in Iowa, as specified in the above cases, the evidence in this case was not sufficient to take

the question of undue influence to the jury. There is no evidence that the influence was in operation at the time the will and codicil were made. True, there is some evidence of opportunity and some evidence of solicitation, but this is not sufficient to meet the demands of the law.—*Affirmed.*

FAVILLE, C. J., and EVANS and MORLING, JJ., concur.