WILHELMINA WACKMAN et al., Appellees, v. ALBERTINE WIEGOLD et al., Appellants.

**WILLS: Undue Influence—Evidence—Declarations of Legatees.** Declarations of one of several testamentary legatees whose interests are separate, and not joint, are inadmissible to establish undue influence. (See Book of Anno., Vol. 1, Sec. 11846, Anno. 245 *et seq.*)

**WILLS: Undue Influence—Definition.** Influence, to be "undue," within the meaning of the law of wills, must be equivalent to moral co-

ercion, must operate at the very time the will is·made, and must dominate and control the making of it. (See Book of Anno., Vol. 1, Sec. 11846, Anno. 168 *et seq.*)

Headnote 1: 22 C. J. pp. 348, 349, 350; 40 Cyc. pp. 1163, 1289, 1290. Headnote 2: ·40 Cyc. pp. 1144, 1145, 1146.

Headnote 1: 38·L. R. A. (N. S.) 732; 28 R. C. L. 401. Headnote 2: 28 R. C. L. 139.

*·· Appeal from Lee District Court.*—JOHN E. CRAIG, Judge.

FEBRUARY 8, 1927.

Action to set aside the probate of a will on the ground of undue influence. The jury returned a verdict in favor of the plaintiffs-contestants, and the defendants-proponents ·appeal.— *Reversed.*

*Herminghausen & Herminghausen* and *Seerley & Clark,* for appellants. ·

*J. M. C. Hamilton,* for appellees.

FAVILLE, J.—I. On November 10, 1923, the testatrix, Henrietta Person, executed her last will and testament. She died on the· 28th day of November, 1923, and on the 8th day of December, 1923, said will was admitted to probate in

1. WILLS: undue influence: evidence: declarations of legatees. the district court of Lee County, Iowa. On September 23, 1924, this action was instituted, to set aside the order admitting said will to probate. The testatrix, at the time of the execution of said will, was 74 years of age, and a widow. The proponents and contestants are her sole children. By the terms of the will she bequeathed to the contestant August ·Person the· sum of $5.00, and the will recites, in regard to said legatee:

"I do not make a larger bequest to him because he at different times received amounts from my husband that exceed any share which he may have ·been entitled to in the estate, should I die ·intestate."

With respect to· the ·other contestant, the provision of the will is as follows:

"I bequeath unto my daughter, Wilhelmina Wackman, the sum of $5.00, feeling certain that she is well provided for."

The homestead, furniture, and fixtures of the testatrix were devised and bequeathed to the daughter Albertine Wiegold. The residue of the property of the testatrix was divided among the other daughters, Henrietta Wiegold, Louise Hesse, and Elenore McGovern. In the petition there was an allegation of mental incapacity, which was withdrawn by the court, and the only question submitted to the jury was the question as to whether or not the will was procured by undue influence alleged to have been exerted by the proponents.

The appellee August was a witness in his own behalf. He was asked whether or not he had a conversation with one of the appellants, Elenore McGovern, in regard to a house and lot. Proper objections were interposed to the testimony of the witness on this subject. The objections were overruled, and the witness testified as follows:

"The conversation took place in the Union Hotel at Burlington, Iowa, the spring after my father died. It was in 1924. She said, 'The girls tell mother that father gave you a house and lot.' I told her he never gave me a house and lot. She said, 'The girls say so.' That is the conversation we had. Mr. Adam Wackman, the husband of my oldest sister, was present. I am not the owner of any home, nor do I own my home."

The theory of the appellees was that the appellants had poisoned the mind of the testatrix against the appellees, and particularly against the appellee August, by informing the testatrix that her husband had given August a house and lot. The husband had died in February of 1923. The testimony was of a conversation between the appellee August and his sister, Mrs. McGovern, and, it is apparent, was a recital and declaration by Mrs. McGovern, referring to the other appellants, that "the girls tell mother that father gave you a house and lot." It is not claimed that the declaration was any part of the *res gestae,* and the question is squarely presented as to whether or not the declaration of one of the beneficiaries under a will, showing or tending to show undue influence in making a will, is admissible in a suit to which all the beneficiaries are parties. In *James v. Fairall,* 154 Iowa 253, we said:

"The overwhelming weight of authority in this country is

to the effect that, where there are several devisees or legatees whose interests are several, and not joint, the declarations and admissions of one of these are not admissible, because they would operate to the prejudice of the other devisees. See cases already cited, and the following of our own which adhere to the same rule: *In re Ames,* 51 Iowa 596; *Dye v. Young,* 55 Iowa 433; *Parsons v. Parsons,* 66 Iowa 754; *Goldthorp's Estate,* 94 Iowa 336; *Hertrich v. Hertrich,* 114 Iowa 643; *Hull v. Hull,* 117 Iowa 738; *Fothergill v. Fothergill,* 129 Iowa 93; *Vannest v. Murphy,* 135 Iowa 123. *Chaslavka v. Mechalek,* 124 Iowa 69, relied upon by appellant, does not announce a contrary doctrine.''

In *Lawless v. Lawless,* 156 Iowa 184, we said:

''This court has frequently announced its adherence to the rule, first definitely recognized in this state in the case *In re Estate of Ames,* 51 Iowa 596, that, in a contest as to the validity of a will on grounds of unsoundness of mind or undue influence, declarations of one devisee, tending to show such unsoundness of mind or undue influence, are not admissible if there are other devisees, not joint with the declarant, whose interests will be prejudiced by the refusal to probate the will on grounds which such declarations tend to establish. Recent cases supporting this rule are *Hertrich v. Hertrich,* 114 Iowa 643; *Fothergill v. Fothergill,* 129 Iowa 93; *Vannest v. Murphy,* 135 Iowa 123; *Casad v. Ripley,* 145 Iowa 544; *James v. Fairall,* 154 Iowa 253.''

In *Albright v. Moeckly,* 202 Iowa 565, we said:

''The bequest to the residuaries was not to them jointly. Jacob was not the principal beneficiary. He was one of a number. His declarations were not a part of the *res gestae.* The law is settled in this state that such declarations are not admissible.''

The rule announced in these decisions requires a reversal. There was other evidence of a similar character, some of it in writing, which came within the inhibition of the rule above stated, and should have been excluded, upon the objections that were made thereto.

II. The case was submitted to the jury solely on the question of undue influence. The testimony in regard to the execution of the will shows that the testatrix, at the time of making

2. WILLS: undue influence: definition.

said will, was 74 years of age, was hard of hearing, and was afflicted with kidney and liver trouble. There is no sufficient evidence of mental incapacity to warrant submitting the question to the jury, and the court very properly withdrew it from their consideration. The evidence in regard to the execution of the will shows without conflict that the testatrix went to an attorney's office in the city of Fort Madison alone, and talked with the attorney in regard to making the will. She had been there on at least one prior occasion for that purpose, when the attorney was busy and could not prepare it. She was executrix of the estate of her husband, and had attended to signing the papers in connection with that estate. On account of her deafness, the attorney communicated with her by writing, and she replied to him orally. She explained to the attorney how she wished the will drawn, and it was prepared by a stenographer and given to the testatrix, who read it and signed it. No one was present at the time except the attorney and the stenographer. After the will was drawn, under the direction of the testatrix it was placed in the clerk's office for safe-keeping.

We have very many times laid down the rule with regard to undue influence in cases of this character. In *In re Estate of Mott*, 200 Iowa 948, we said:

"Influence, to be undue, within the meaning of the law, must be such as to substitute the will of the person exercising the influence for that of the testator, thereby making the writing express, not the purpose and intent of the testator, but that of the person exercising the undue influence. It must be equivalent to moral coercion, must operate at the very time the will is made, and must dominate and control the making of it. *Henderson v. Jackson*, 138 Iowa 326; *Parker v. Lambertz*, 128 Iowa 496; *Perkins v. Perkins*, 116 Iowa 253; *In re Will of Richardson*, 199 Iowa 1320."

See, also, *In re Estate of Cooper*, 200 Iowa 1180.

Mere opportunity to exercise such influence, or a disposition to exercise it, is not sufficient. Neither is mere advice, suggestion, or importunity, unless it appears that the will of the testator is rendered subservient to the will of the person exercising the undue influence. Measured by these oft-repeated and well established standards, the evidence in this case fails to

show such a state of facts as would justify the court in submitting to the jury the question of undue influence in procuring the execution of the will in question. There is no proof of such facts or circumstances in the record as would sustain the conclusion that the will of the testatrix was overcome or unduly influenced to any such extent as that the will of the proponents, or either of them, was substituted for that of the testatrix in the execution of said instrument. Upon the record as made, the trial court should have sustained the appellants' motion for a directed verdict. It is unnecessary that we consider other errors.

For the reasons pointed out, the judgment of the district court must be, and it is,—*Reversed*.

EVANS, C. J., and STEVENS and VERMILION, JJ., concur.