DORA WOLFE, Appellant, v. MAUDE SHROYER, Executrix, et al., Appellees.

OCTOBER 23, 1928.

Batschelet & Vincent and W. D. Milligan, for appellant.

W. F. Moore and Harry D. Byers, for appellees.

PER CURIAM.—The testator, Silas Sheeder, died October 27, 1925. He was survived by his widow, three children, and the two children of a deceased son. He owned about 560 acres of land. The appellant is a married daughter of the decedent's, who, at the time of the trial, was about 36 years of age. The evidence in behalf of the appellant showed that there had been difficulty between the appellant and her mother and a younger sister, but it does not appear that the testator participated in the ill feeling that existed between the other members of his family. The evidence shows that, sometime prior to December 28, 1923, the testator had made a will. The exact date of this will and its

contents do not appear in the record. It does appear, however, that under said will he had devised a certain 80-acre tract of land to the appellant. It appears also from the record that the testator's son Harry died in the month of December, 1923, leaving two children, and on December 28, 1923, the testator executed a second will. The undue influence upon which appellant relies is claimed to have been exerted over the testator at the time of the making of this second will. The will was drawn by a banker and lawyer, who had known the testator for many years. It appears from his testimony that, at or about the time the said second will was drawn, the testator had made some readjustments of his finances, and had made a loan upon some of his property, increasing the amount due thereon, and, the son Harry having died, the said second will made provision for the said grandchildren. Concisely stated, it is the appellant's contention that, at the time of the execution of this second will, on December 28, 1923, the mind of the testator was poisoned against the appellant by the conduct of testator's daughter Maude. The precise contention is that at said time reference was made to an illness with which the testator had been afflicted, and that the daughter Maude at said time said to her father, in substance, that the Wolfes (meaning the appellant and her husband), during the sickness of the father, "had made the expression that they hoped that he would die," or words to that effect. The evidence tends to show that the widow of the decedent and the daughter Maude accompanied him to town at the time the will was drawn, and that they were with him during part of the conference with regard to the will, and that part of the time they were doing some shopping. There is no evidence of any statement to the testator with regard to how his will should be drawn. We quote from the testimony of the scrivener of the will, as follows:

"At that time, and before this second will was drawn, there was certain conversation there by Maude Shroyer, and the conversation was general, in the hearing of her father and myself. She said that the Wolfes,—he had been sick,—and during his sickness they had made the expression that they hoped that he would die, or words to that effect, substantially,—as near as I can tell what was said at that time. By the Wolfes I understood her to refer to the plaintiff, Dora Wolfe, and to her husband. I

don't know whether the statement or words to the effect was repeated more than the one time. I heard the statements more than one time, but whether it was in there I don't know. I heard this statement made more than once by Mrs. Shroyer. I am not sure it was that same day, or at a later time. I heard her make the expression, I think, on other occasions. I know at that time there was some such talk as that. I do not know what her father said in answer to that. I had some talk with Mr. Sheeder, not in the presence of Maude or her mother, in which this matter was discussed. We talked the matter over, and he asked me something about it, but I can't state what was said. Following the statements that I have already testified to as made by Maude, we had the old will present, and he told me to change the devise to Mrs. Dora Wolfe to a certain 40 acres, and told me what 40 it was, and the will was drawn in accordance with his direction. As to whether this was in response to this other or not, I don't know. I know the talk was at that time, and I was instructed to change the will in that particular. Whether it came from that,—was in response to that,—I do not know. I don't remember that those statements by Maude Shroyer were made more than once at that time, but I have heard her make the statement,—whether in the presence of Mr. Sheeder or not, I am not sure; but there was such talk at the time that will was drawn; but whether she repeated it again and again there—I don't think she did.''

It appears that, in the will of December 28, 1923, the testator gave a devise of a 40-acre tract to the appellant, and that, in the former will which he had drawn before the death of the son Harry, he had devised to the appellant a tract of 80 acres of land. Subsequently, to wit, on the 27th day of May, 1924, the testator executed the will in controversy in this action. There is no contention that the daughter Maude was present at the execution of this last will, nor is there any claim of any undue influence in its execution, except the claim of undue influence produced by the statement of the daughter Maude prior to the execution of the will of December 28, 1923. The last will also devises to the appellant the said 40-acre tract of land, and describes the appellant as ''my beloved daughter, Dora Wolfe.''

We have recently had occasion to consider the question of

undue influence in the execution of a will. In *In re Will of Richardson,* 199 Iowa 1320, we said:

"Influence, to be undue, within the meaning of the law, must be such as subjects the will of the testator to that of the person exercising the influence, and makes the written will express the purpose of such person, rather than that of the testator. It is frequently said that it must be equivalent to moral coercion, and directly connected with the execution of the will, operating at the time it was made. *Perkins v. Perkins,* supra [116 Iowa 253]; *Parker v. Lambertz,* 128 Iowa 496; *Henderson v. Jackson,* 138 Iowa 326. The person charged with exercising undue influence need not have been personally present when the will was made, but his influence must have been actively operative. *Brackey v. Brackey,* 151 Iowa 99; *In re Will of Busick,* 191 Iowa 524. Undue influence is not established by proof of opportunity to exercise it and a disposition to do so. *Fothergill v. Fothergill,* supra [129 Iowa 93]; *Casad v. Ripley,* 145 Iowa 544; *Zinkula v. Zinkula,* 171 Iowa 287. Importunity, requests, and persuasion that do not go to the point of overthrowing the will of the testator, are not sufficient to constitute undue influence. *Sutherland State Bank v. Furgason,* 192 Iowa 1295; *Perkins v. Perkins,* supra; *Gates v. Cole,* 137 Iowa 613; *In re Estate of Townsend,* 128 Iowa 621."

See, also, *In re Estate of Paczoch,* 202 Iowa 849; *Wackman v. Wiegold,* 202 Iowa 1391; *In re Estate of Mott,* 200 Iowa 948; *In re Estate of Cooper,* 200 Iowa 1180; *Hann v. Hann,* 202 Iowa 807; *In re Will of Johnson,* 201 Iowa 687. Under the record in this case, there was no such evidence of undue influence exerted upon the mind of the testator at or about the time of the execution of the will in question that could properly carry to the jury the question of undue influence in procuring its execution, or support a verdict in behalf of the appellant, if one had been based thereon. The court did not err in directing a verdict for the appellees, and the cause is—*Affirmed.*