IN RE ESTATE OF ULFERT WIENTJES.

NOVEMBER 20, 1928.

*Martin & Alexander* and *F. J. Lund*, for appellant.

*Burnstedt & Hemingway*, for appellee.

EVANS, J.—The decedent was Ulfert Wientjes, who died in February, 1926. His age at the time of his death was 91 years. In his early years, he was a farmer, and owned and occupied a farm in Butler County. His first wife, the mother of his children, died about 1905, leaving her husband surviving her, with three children,—a son, Martin, and two daughters, Nellie and Minnie. For some years, the surviving husband lived with his children. He was the owner of a 160-acre farm in Butler County, which he conveyed share and share alike to his children, and accepted as consideration therefor an annuity of $300 per year. He acquired a little property at Webster City, where his brother Fred lived. About 1911 or 1912, he married Mrs. Clark,

a resident of Webster City. From that time, he made his home in Webster City. Mrs. Clark had been previously twice married, her first husband being Mr. Young. From her first marriage she had three children,—two sons and a daughter, all grown up and married. She predeceased the decedent, in November, 1925. Her son John Young was a resident of Webster City, living in his own home. He is the residuary legatee of the will involved in this contest, and is the proponent of the will. The will gave to the wife a life estate in all the property. The remainder of the estate was distributed among her children,— the major share being given to John Young. The will was executed September 30, 1920. The will contained no reference to the testator's own children or grandchildren. Martin, the son of the testator, survived him. His two daughters predeceased him. Nellie died childless; Minnie died leaving two children surviving her. The evidence of the testator's affection for his own children is quite abundant. Martin visited him often at Webster City. The amount of the estate of the decedent was approximately $2,000, which comprised the little home in which decedent and his wife lived throughout their married life.

The son, Martin, contested the probate of the will. As grounds thereof, he charged mental incompetency and undue influence. Upon the trial, the court withdrew from the jury the issue of mental incompetency, and submitted the case solely upon the issue of undue influence. The jury sustained the contest, and rejected the will, and judgment was entered on the verdict accordingly.

The errors assigned on this appeal may all be resolved into one proposition: that is, that the verdict had no support in the evidence, in that there was no substantial evidence that the will in question was executed under undue influence.

The persons charged as having exercised the undue influence are John Young and his mother, the wife of the decedent. The general contention of the contestant was, and is, that the wife of the decedent dominated him, and that, with her help, John likewise dominated him. The will in question was the third made by the decedent within a period of about two years. The first will was made in the year 1918. It was not materially different, in its disposition of property, from the will now under consideration, except that Mrs. Smith, the sister of John Young,

was made the ultimate beneficiary of the estate, subject to the life estate of her mother, the wife of decedent. Mrs. Smith lived near by, and was at all times serviceable to the aged couple, and was loved by the decedent. The contents of this will were made known, at the time, to the decedent's own children. Nor did they complain thereof. In September, 1920, Mrs. Smith died, and the decedent's children came from Butler County to her funeral. On the day of the funeral, there was a conference between the son, Martin, the son-in-law Siebengard, and John Young. The details of this conference are in dispute, but it concerned the advisability of a new will to be made by the decedent, in view of the death of Mrs. Smith. The subject was carried to the decedent, and he went with them to a law office, where a second will was executed. This will provided a life estate to the widow, with the remainder over to Martin, Siebengard, and John Young. Two weeks later, that will was destroyed, and the will in question was made.

There is no direct evidence of the exercise of any undue influence, either by John Young or his mother, in the making of this will. The evidence is wholly circumstantial, and consists in the main of alleged harshness of conduct on the part of the wife toward the decedent. She called him a "fool," at one time, because of views he expressed concerning the planting of onions. She told him at another time that she would knock out his brains with the poker. At another time, she struck him with a fly swatter. At another time, she told him to shut up, and cease his conversation with the witness, who was engaged in conversation with the decedent, and who was not, at the time, on friendly terms with his wife. These are the more tangible circumstances put in evidence. Virtually all of them occurred in the last three or four years of his life. It appears also that his brother Fred and members of his family knew the contents of the will in question, and that, in the later years of the decedent's life, they talked with him about it, and told him that he was giving his property to John Young. He answered that "John and Mama made me do it." This was long after the execution of the will. The nurse who attended him in his last illness gave testimony of similar character. The court properly instructed the jury that these incidents were descriptive of the state of mind of the de-

cedent at the time they occurred, but that they could not be considered as evidence of undue influence.

The more important circumstance upon which the contestant relies, is the fact that the will is apparently unfair and unnatural, in that it gives the testator's property to a stranger, to the exclusion of his own children. The court properly instructed at this point also, that this was a circumstance that could be considered in connection with other appropriate evidence, but that it was not, of itself, proof of undue influence.

We naturally inquire at this point whether, under all the circumstances surrounding the testator, the will *was* so unreasonable and unnatural as contended. We note first that the testator had, many years before, given substantially all his property to his children, subject to a small annuity of $300 for his own support. He afterwards inherited from his deceased daughter, Nellie, an interest in her share of the land. This he sold to his son and son-in-law, for the sum of $2,000, by accepting their offer of that amount. This was substantially less than the value of the inheritance.

The alleged unreasonable provisions of the present will were the same as those in the will made in 1918. Those were mutually recognized as not unreasonable. The testator's children got nothing therefrom. To get another viewpoint, let us suppose that the will had disposed of all this little property to the wife. She was younger by 10 or 11 years than the testator. Her expectancy of life was accordingly greater. No one would contend such a disposition of his estate to be unreasonable. Such a provision would carry the property out of the testator's line of descent. If she had asked and urged her husband to make such disposition in her favor, would anyone say that it constituted undue influence on her part? If, in lieu of a devise giving to her all the property, she had preferred to take a life estate therein, provided that the remainder was given to her son, would this open the door to a larger complaint by the son of the testator? For the testator to make his will in the form in which he did, enabled his wife to enjoy the use of the property during her life, and insured to her the passing of the remainder to her own son, without necessity on her part to make a will to such end. In other words, if the testator had devised the whole property to her, she could have devised it as she would. Is

there any legitimate reason why the same end might not be accomplished by understanding between husband and wife through the provisions of the husband's will? Whatever effective influence there was in this case was exercised by the wife. If she could have exercised it legitimately in her own favor, was it less legitimate if exercised in favor of her son? As a proposed life tenant, she had an interest in the selection of the remainderman. A life tenant may be greatly tormented by an unfriendly remainderman standing at her door. Incipient controversy over waste and impairment, and the mutual obligations of life tenant and remainderman, frequently lurk in such a case. In this case, it is true, the wife predeceased the testator. But the validity of the will is to be tested by the circumstances existing at the time it was made, and not by after events. The fact that the will was made more than five years before the death of the testator, and that its contents were known, not only to him, but to his brother Fred and family, is quite confirmatory of the will. It could have been changed by the execution of a new will at any time. To have changed the will after the death of his wife might have been a reasonable thing to do, in view of the death of his wife. But even so, the failure to do it could have no effect whatever upon the validity of the will already existing. It is quite apparent from the record that the real influence that operated upon the mind of the jury was the supposed unfairness of the will. The case is, in some respects, similar to *In re Estate of Sexauer*, 198 Iowa 1378, in which we said:

"The objective of the instruction was the question of undue influence. The record contains no other evidence of undue influence than the circumstances recited in the instruction. The effect of the instruction was to permit the jury to find undue influence if they believed that the terms of the will were *unfair*, and *not in accord with the previous intentions* of the testatrix, either express or implied. This was erroneous. The jury cannot be permitted to substitute its judgment for that of the testatrix as to what is a fair distribution. *In re Will of Martin*, 166 Iowa 233. This is not saying that they may not consider whether the disposition made is natural or unnatural, reasonable or unreasonable, as bearing upon the question of mental competency or undue influence, provided that there be other evidence in the record fairly tending to show mental incompetency or undue

influence. This record discloses no standard whereby the jury could say that the will was unnatural or unreasonable. We reach the conclusion, also, that, because the record discloses no evidence of undue influence, such issue ought to have been withdrawn from the jury, on the motion of proponents to that effect.''

See, also, *Wolfe v. Shroyer*, 206 Iowa 1021.

Our conclusion is that the verdict was without sufficient support in the evidence, and should have been set aside, upon the proponent's motion. For the same reason, a verdict should have been directed, at the close of the evidence.—*Reversed.*

STEVENS, C. J., and FAVILLE, KINDIG, and WAGNER, JJ., concur.