E. E. BAILEY, Appellant, v. CHEROKEE STATE BANK et al., Appellees.

No. 39786.

OCTOBER 22, 1929.

*Claud M. Smith,* for appellant.

*L. C. Ary, Molyneux, Maher & Meloy,* and *J. F. Loughlin,* for appellees.

GRIMM, J.—Mary A. Potter, the testatrix in this case, and her husband, John F. Potter, came to Cherokee County, Iowa, in the late 60's or early 70's, and engaged in the occupation of farming. Some 20 years ago, the Potters retired from active farm life, and moved to Cherokee. John F. Potter died on April 15, 1927, at the age of 92 years, leaving a substantial estate. The will in this case was executed by Mary A. Potter at Cherokee, Iowa, on April 21, 1927, six days after the death of her husband. The testatrix died March 29, 1928, at Cherokee, Iowa, at the age of about 85, leaving an estate estimated at about $40,000. The will was admitted to probate on the 10th day of April, 1928. This suit was brought on the 20th day of June, 1928. It is sought to set aside the will on two grounds, to wit: undue influence and lack of testamentary capacity. The will is quite lengthy, containing 15 separate paragraphs. It provided for the payment of debts and funeral expenses and the care of a cemetery lot. The home and the furniture therein were bequeathed to one Flora Sawvell. Four members of the Bailey family were given $1,000 each; Ed Morgan, a nephew of her late husband's, was given the sum of $500; $500 was given to Marietta Murphy, daughter of John Page Potter; one Stiles, of Omaha, Nebraska, was given $2,000; a Mrs. Stiles was given the sum of $1,000; four other members of the Stiles family (children of a half sister) were each given $500; one May Brummer, of Cherokee, was given the sum of $1,000; two children of George Brummer's were each given $500; Mr. Stiles was given $1,000; the Sioux Valley Hospital Association, of Cherokee, and Speculative Lodge No. 307 A. F. & A. M., of Cherokee, Iowa, were residuary legatees; the State Bank of Cherokee was named as executor; the plaintiff, E. E. Bailey, brother of the testatrix, for many years a resident of Memphis, Tennessee, and at the

time of the trial 85 years of age, received nothing under the will, and is the contestant.

At the close of all the evidence on behalf of the contestants, the court directed a verdict in behalf of the defendants.

I. The appellant complains of the exclusion of testimony offered on behalf of the contestants. The plaintiff was a witness in his own behalf. The plaintiff offered to show that, when he  visited the testatrix in May of 1927, after the execution of the will, the two witnesses to the will had a conversation with Mrs. Potter at her home (not in the presence of the plaintiff), and afterwards, one or the other of the witnesses told Bailey that the testatrix didn't want him, the plaintiff, around the premises, or words to that effect. The offer contained other matter of a similar character. To this offer suitable and proper objections were made. The plaintiff undertook to limit the introduction of this testimony for the purpose of showing the "mental condition or mental ability" of the testatrix. Manifestly, this offer was properly excluded. Further questions asked of the plaintiff called for communications between the witness and the testatrix, and were properly excluded.

Ross W. Bailey, son of the plaintiff, and one of the legatees named in the will, was produced as a witness. A number of questions were asked of him, which, upon proper objections, were sustained. All of these questions which were of any importance called for personal transactions with the testatrix, and the evidence was properly excluded. An attempt was made to introduce certain memoranda made by the witness which he claims were dictated by the testatrix, and which pertained to her expressions concerning the making of a will. It is not claimed that these memoranda were signed by the testatrix. Appropriate objections were made to the introduction of these memoranda, and the same were properly excluded.

Mrs. Effie Bailey, the wife of said Ross W. Bailey, was also introduced as a witness on behalf of the plaintiff. Several questions were asked of her which plainly called for personal communications and transactions with the testatrix. Several other questions were asked of other witnesses, calling for conversa-

tions with the testatrix at various times, months after the making of the will.

There was no expert testimony in this case. There was no evidence that the testatrix was, at any time, before or after the making of the will, suffering from any mental disease progressive in its character.

We have held (*In re Estate of Cooper*, 200 Iowa 1180), that the erroneous exclusion of testimony becomes quite immaterial when the testimony admitted and rejected fails to warrant a finding that the testator was "of unsound mind," as that term is known and used in the law of this state.

We have examined all of the questions to which objections were sustained, very closely, and we readily reach the conclusion that the court committed no prejudicial error in reference to the exclusion of testimony offered on behalf of the plaintiff. To take up each of these questions separately and dispose of them would unduly extend this opinion.

II. It is claimed by the plaintiff that, on the day of the execution of the will, the testatrix was of unsound mind, and that sufficient evidence was introduced on behalf of the plaintiff to warrant the court in submitting the case to the jury on that issue.

The witness Ross W. Bailey, son of the plaintiff, testified that he thought the testatrix was of unsound mind. He was at the home of the testatrix at the time of the funeral of the husband of the testatrix; but a careful examination of all of the evidence upon which the witness based his opinion, as a nonexpert, discloses that the recital of facts, coupled with the nonexpert opinion of the witness, was not sufficient to take the question to the jury. Another witness, Effie Bailey, the wife of Ross W. Bailey, after having stated, "I certainly wouldn't think she had an absolute sound mind at her age," said she "knew nothing about her state of mind on April 21, 1927." A neighbor, Walter Dodge, stated:

"I do not believe her mind was sound on or about April 20th and 21st, 1927. Her mind was failing with her body."

This conclusion was based upon a recital of facts such as that:

"She got up early and went to bed late, and worked all the time. She mowed the lawn, took care of her chickens, and had a small garden there. I knew of her ironing after supper, and until 10 or 11 o'clock at night. She was on the go all of the time; she never stopped. She had about two dozen chickens about her, and she had some of them in the house."

He testified that:

"After her husband's death, she was very nervous and upset over his death, and frequently she had company around her, which seemed to worry her, because she couldn't hear, and because she couldn't get around to do the work as she would like to do."

There is nothing in the recital of facts upon which the witness Walter Dodge could properly base an opinion of unsoundness of mind.

Mrs. Walter Dodge testified that testatrix was childish and peevish.

W. E. Bailey, a grandson of the plaintiff's, testified that, in November, 1927, and February, 1928, testatrix was a woman of unsound mind. He testified that he did not know her physical or mental condition in April, 1927, when the will was drawn. An examination of the recital of facts upon which he based his conclusions as to her mental condition in November, 1927, and February, 1928, utterly fails to disclose the basis for his conclusion. The recital has to do with the ordinary and usual little items of forgetfulness and oversight of old people.

One E. E. Bailey, son of the plaintiff, and one of the legatees named in the will, also stated "that, in his opinion, following the death of the husband of the testatrix, the testatrix was of unsound mind." His testimony related principally to the manner in which the testatrix kept her house. It is a recital of many little things which were either left undone or done in a way which seemed to the witness out of the ordinary. There is nothing in the recital which warranted the conclusion of the witness.

Viola Bailey, the wife of the witness W. E. Bailey, testified that she was at the home of the testatrix in the month of November, 1927, several months after the will was made. In addition to testifying that the testatrix occasionally would tell the same

thing over again, and ask the same question more than once, the witness said:

"She was not as tidy as she could have been. Her clothes were not as clean as they could have been. She wore a cap around; it wasn't very clean. Her shoes were not well kept. She was all stooped over; there was something the matter with her spine. She would hesitate in talking. She was doing her housework there and taking care of three or four little chickens there. It seems to me that she didn't see very well, or she didn't notice just exactly what she was doing,—I don't know which it was. I couldn't say as to that, but her cooking utensils, they were all dirty and black on the bottom. Her dishes, they were not as clean as they could have been. Sometimes when you have eggs, or something like that, they stick to the plate, and it is hard to wash them off; and there would be little particles on the dishes or between the prongs of the forks, and for lunch, she put apple sauce on the table that had mould on it. I took it and showed it to her, and told her it was unfit for use, and I took it off the table; and the tablecloth wasn't any too clean."

Further comment as to this witness seems unnecessary.

A. J. Geddes, who lived a few blocks from the testatrix, testified that, in his opinion, in the month of April, 1927, the testatrix was "old and childish. I would say she was childish." But the recital of facts upon which he based a conclusion furnishes no basis even for that conclusion.

It is a well established rule that the opinion of a nonexpert witness that a testator was of unsound mind is no stronger than the facts testified to by the witness on which the claim is based. *Fothergill v. Fothergill,* 129 Iowa 93; *In re Estate of Paczoch,* 202 Iowa 849.

As was said in the latter case:

"It is a matter of common knowledge that with advancing years the faculties grow dim, and the mental processes are slower; but such condition, without more, does not necessarily deprive a testator of the mental capacity to execute a valid will. So long as he retains the ability to know his property and to remember the natural objects of his bounty and to exercise judgment and discretion in regard thereto, he is mentally competent to execute a valid will."

The evidence shows that the testatrix was quite deaf. She also had a curvature of the spine. Nevertheless, she was a very active and very thrifty woman. As one witness, a near neighbor, and entirely disinterested, stated:

"I lived neighbor to Mrs. Potter since 1917, and found her a good neighbor. She always kept her premises up in pretty good style outdoors and all around the home. She kept up her flowers and her garden, and seemed to enjoy doing those things. She was up early in the morning at those tasks. She was upset over the death and illness of her husband, as naturally she would be, and I would be shocked if she was not upset. In fact, Mrs. Potter was an astonishingly vigorous woman for her years. She shoveled the snow from her walks."

The evidence discloses that the testatrix kept chickens, and that at times, in the chill weather of spring or fall, she would, for a time, have a few of the little chickens in the house or in the basement. She kept a good garden, and raised her own vegetables, doing all of the work herself. She dug her vegetables and stored them in the cellar, picked her fruit and canned it, and did all of the things in and about the home, in a way an old-fashioned, industrious, frugal woman of her type and age would naturally do. She had lived a long, long time in the old home with her late husband, and, as is often the case, after the death of her husband she much preferred to live alone, rather than to live with anyone else. Undoubtedly she was influenced to this conclusion, to some extent, by reason of the fact that she was very deaf, and it was hard for her to understand. On the other hand, a number of letters written by her disclose that she had many callers, from time to time. These letters are unusually well written, for one of her years and education; they evidence no mental incapacity, but rather, an unusual alertness and ease of expression, for one of her years and station in life. There is evidence in the record to the effect that, in the latter years, on occasions, she slept on the lounge, with her clothes on. It appears that sometimes she was a little forgetful; that she was not as tidy in the manner of her housekeeping as she formerly had been; that occasionally she let some of her food which was in the course of preparation burn, and permitted the coffee to boil over, and numerous other small, inconsequential things. It

was claimed by witnesses that occasionally, because her eyesight was not as keen as formerly, she would serve some food which was a little mouldy.

The foregoing illustrates the peculiarities with which the testatrix was charged, and upon which, as a basis, the claim is lodged that she was of unsound mind. She was inclined to be a little secretive at times in reference to the information she gave out to some of her relatives. She seemed somewhat disturbed because her brother, the plaintiff, had a copy of her late husband's will. She evidently did not care to have some of her relatives know how much property she had. There is nothing unusual about this. There is nothing in the record concerning the testatrix which is not often found in cases of advanced years, coupled with the loss of a lifelong companion. The will as drawn shows that she was perfectly conversant with the relationships which surrounded her, and knew the extent of her property interests.

It is apparent that all of the acts recited by the witnesses had to do with either the anguish and sorrow of testatrix on account of the recent death of her husband, her deafness, the curvature of her spine, the failing eyesight incident to old age, or the other ordinary common peculiarities of advanced years. Mere old age or some deterioration in physical or mental powers, or peevishness, childishness, and eccentricity, are not sufficient to carry to the jury the issue of mental unsoundness.

We have read the entire record very carefully, and we reach the conclusion that, under the rules established by this court, the contestant has failed to produce competent evidence sufficient to go to the jury on the question of the alleged mental incapacity of the testatrix.

III. It is claimed in the petition that:

"The said purported last will and testament of the said Mary A. Potter, deceased, is not the last will and testament of said deceased, for the reason that, at the time of the purported execution of the same, the said Mary A. Potter was actuated by undue influence brought to bear upon her by parties interested in the distribution of the estate."

There is no direct charge in the pleadings that the will was the result of undue influence of any particular person or per-

sons. The appellant does not designate in the argument anyone guilty of exercising undue influence over the testatrix. There is some intimation in the testimony that Mr. Herrick, attorney, and Dr. Hall, both of whom were close friends of the testatrix, had exercised some influence over her. As was said in *In re Estate of Cooper*, 200 Iowa 1180, 1185:

"The burden of proving undue influence is on the party alleging it, who must show that it operated on the mind of the testator at the very time the will was executed, to such an extent that the will was the result thereof."

We have examined the record with great care, and we concur in the conclusion of the lower court that there was no such showing of undue influence in procuring the execution of the will as would carry the question to the jury. Upon a consideration of the whole record, we approve of the action of the district court in directing a verdict for the defendants, and the case is, accordingly,—*Affirmed*.

ALBERT, C. J., and STEVENS, DE GRAFF, and MORLING, JJ., concur.