CHARLOTTE A. SCHROEDER et al., Appellants, v. GEORGE W. CABLE et al., Appellees.

No. 40593.

FEBRUARY 17, 1931.

*Glenn D. Kelly* and *U. A. Screechfield*, for appellants.

*Cook & Balluff*, for appellees.

STEVENS, J.—I.   Jennie Braithwaite, testatrix, died in Scott County, June 26, 1927.   Her will, which is the subject of this controversy, was prepared by her attorney on the evening of the preceding day.   The instrument was promptly filed in the office of the clerk of the district court of Scott County, and duly admitted to probate.

The grounds alleged by appellants upon which the court is asked to set aside the probate of the will and to declare it null and void are:   (a) That its execution was the result of fraud and undue influence exercised over testatrix; and (b) that she was mentally incompetent at the time of the execution of the will to comprehend and understand the nature and extent of her estate, or to know those having claims upon her bounty. There was also a prayer in the petition asking the construction of certain provisions and paragraphs of the will.

We deem it unnecessary to recite in detail the testimony relied upon by appellants to sustain the allegations of their petition.   Briefly summarized, the evidence is substantially as follows:   The testatrix was 80 or 81 years of age.   Her parents were English, and perhaps she, too, was born in England.   The record is not very clear on this point.   She resided, however, with her parents in Davenport for many years, and, following the death of her mother, with her father, and latterly with an unmarried sister, in the old family home.   The sister died a few months before testatrix.   Testatrix was never married. Jennie, the testatrix, was appointed administratrix of the estate of her sister, and served in that capacity.   For a number of years, testatrix was afflicted with chronic asthma, and was occasionally ill.   Her physician, Dr. Bendixen, who attended her in her last illness, had been acquainted with the family for several years, and was their physician.   Testatrix was in her usual health until Sunday preceding her death, when she became ill, and friends were called in.   She had a practical nurse to attend

her until the evening the will was executed, when a skilled nurse was, at the request of the physician, sent to the home to care for her. Testatrix appears to have grown weaker from the commencement of her illness until very shortly before her death, on June 26th. She was visited daily by her physician, and, as stated, was attended by a practical nurse. Testatrix always objected to having a trained nurse. The immediate cause of death, according to the testimony of the physician, was acute dilation of the heart. There was present when the will was executed a representative of the trust company which is named as trustee in the will, the lawyer who drew the instrument, and Jessie Flint, a friend. There is some possible uncertainty as to who requested the lawyer and the representative of the trust company to be present, but the clear preponderance of the testimony is that both were present at the request of testatrix. Testatrix had desired another officer of the trust company, but he was, on account of absence, unable to be present.

The will designated many beneficiaries, the names of all of them being given to the lawyer by the testatrix, who also designated the amounts and property she desired each to have. She was prompted to some extent by Jessie Flint, but the bequests were distinctly directed by testatrix. According to the testimony of all present, the attorney sat by the side of the bed while testatrix, who was propped up to make her comfortable, gave him the necessary information for drafting the will.

The will makes five separate bequests of $1,000 each to the Trinity Cathedral of Davenport, each in memory of her mother, sister, or other near relatives designated by testatrix. The foregoing bequests are preceded by a gift of $1,000 to a Masonic Lodge in Davenport, of which her father was a member. Then follow numerous bequests of small sums from $50 to $250 each to relatives, some residing in Davenport, one in California, and some in England. Following these specific bequests, the will gives to the park commissioners of the city of Davenport a small tract of land, to be held by them in trust forever, to be used as a children's playground. All the rest, residue, and remainder of the estate, consisting of real and personal property, is devised to the American Trust Company of Davenport in trust, to be managed and invested by said trustee, and the net income to be paid to designated beneficiaries so long as they shall live

The will then provides that the net income, if any remaining, and the entire net income after the termination of the life annuities, shall be paid in equal shares to certain charitable institutions in the city of Davenport. The will nominates the American Trust Company as executor. The estate consisted in part of farm land, and, in the aggregate, amounted to about $50,000.

As stated, each of the beneficiaries named in the will, together with the charitable institutions, seven or eight in number were chosen by the testatrix without suggestion, memorandum, or assistance of any kind. When the will was finally reduced to writing, it was read over to testatrix and signed by her, and by the attorney, the doctor, and Jessie Flint, as witnesses.

Jessie Flint and one other witness testified to a few instances and circumstances tending to indicate that testatrix had brief delusions, and expressed it as her opinion that she was of unsound mind when the will was signed. The others present at the time of the execution of the will testified that, in their opinion, testatrix was of sound mind. The witnesses included the doctor, the lawyer, the representative of the trust company, and the trained nurse. Jessie Flint testified that, while the attorney was making a memorandum, preparatory to the drafting of the will, testatrix called attention to a dog running across her bed, to which she waved. This incident was denied by the other witnesses. Two or three other minor incidents, which it is claimed disclosed mental incapacity, were shown.

It is so obvious from a careful analysis of the record that testatrix was not only capable of knowing the extent of her estate, but also those having claims upon her bounty, that little need be said by way of discussion. Much emphasis is given by appellants to alleged statements of the testatrix made prior to her last illness that she desired her estate to go, one half to her father's heirs and one half to the heirs of her mother. There is also some testimony introduced for the purpose of showing that testatrix did not desire to make a will, and that she complained of the haste claimed to have been manifested by those present. The attorney who wrote the instrument testified that he asked testatrix, upon his arrival at her bedside, if she desired him to write her will, and that she answered in the affirmative. It is also claimed that the witnesses did not sign the instrument at

her request. The attorney, however, testified that he suggested that the parties named would be proper witnesses, and the suggestion was accepted by testatrix. The record contains no testimony in any way tending to show fraud or undue influence. As indicative of the apparently keen mind of the testatrix, when the will was read over to her before it was signed, she promptly observed that the name "Elijah" was written therein for "Elihu," and other errors of a similar character, and the instrument was altered in conformity with her criticism. Much emphasis is also placed by appellants upon the testimony of some of the witnesses that Dr. Bendixen told Jessie Flint, or others, that testatrix had been dying for two days. This is denied by the doctor, who testified that testatrix was not dying, but was suffering from an asthmatic condition, which was complicated with a bad heart. The evidence does not show that she was dying, or so weakened that she was lacking in testamentary capacity. What constitutes testamentary incapacity has been too often defined by this court to require discussion. The same is true as to fraud and undue influence, but see *Ross v. Ross,* 140 Iowa 51; *Bailey v. Cherokee State Bank,* 208 Iowa 1265; *In re Will of Byrne,* 186 Iowa 345; *Blakely v. Cabelka,* 203 Iowa 5; *Womack v. Horsley,* 178 Iowa 1079.

II. The petition of appellants was dismissed, but the court, nevertheless, interpreted certain clauses of the will in which the identity of the beneficiary was not quite certain. This was done upon the cross-petition of the beneficiaries who would be affected, and who appeared as interveners in the case. Furthermore, the parties interested stipulated that the court might pass upon the question thus presented. Having no interest in the property upon any theory, appellants cannot complain of this action by the court. *Beidler v. Dehner,* 178 Iowa 1338.

A question is also raised as to the taxation of costs. The action, as stated, was to set aside the probate of the will and to declare the same null and void, as well as for the construction of certain paragraphs of the will. Appellants were the losing parties, and should pay the costs. Other questions discussed are without merit. We find, after a careful analysis of the record,

that the finding and decree of the court is right.—*Affirmed.*

FAVILLE, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.